Susan MAJCZYK and Gary Majczyk, Her Husband, Appellants

v.

John R. OESCH.

Superior Court of Pennsylvania.

Argued Sept. 5, 2001.

Filed Dec. 28, 2001.

Elliott J. Segel, Erie, for appellants.

William P. Delaney, Erie, for appellee.

Before DEL SOLE, President Judge, McEWEN, President Judge Emeritus, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE, STEVENS, MUSMANNO, and ORIE MELVIN, JJ.

ELLIOTT, J.

¶ 1 This is an appeal following a jury verdict in favor of the defendant/appellee John Oesch ("appellee") in a personal injury action resulting from a motor vehicle accident. We affirm. The relevant factual and procedural history, taken from the trial court's opinion and supported by the record, follows:

On February 25, 1995, Plaintiffs' vehicle was stopped at a traffic light on upper Peach Street in front of Defendant's stopped vehicle. Plaintiff Susan Majc-

zyk was the passenger, and Gary Majc-zyk, her husband, was the driver of Plaintiffs' vehicle. Defendant noticed the light had changed and eased off the brake, drifting forward at less than 5 mph, thereby bumping Plaintiffs' vehicle from behind. (T.T., p. 317). From this accident, Plaintiff Susan Majczyk claims to have suffered a herniated cervical disc, and her husband a loss of consortium claim.

Trial court opinion, 10/1/99 at 2.

¶ 2 The case proceeded to trial on June 7, 1999.

At the jury trial, the jury found against the Plaintiff, Susan Majczyk, and for the Defendant. Following the jury verdict, this Court denied Plaintiff's Motion to Set Aside Jury Verdict and Motion for a New Trial. On appeal, Plaintiff Susan Majczyk raises four issues: (1) whether the jury verdict was contrary to the evidence presented at trial; (2) whether the Court improperly permitted Defendant to cross-examine Plaintiff's treating chiropractor, Dr. LaDow, regarding the possibility that his spinal adjustments contributed to Plaintiff's cervical herniated disc; (3) whether the Court erred in precluding Plaintiff's expert witness, Dr. Michael Freeman, from testifying as an expert in trauma epidemiology; and, finally, (4) whether the Court erred in not directing Defendant to show the jury the redirect and recross-examination from the videotaped deposition of Defendant's expert, Dr. Daniel Funk, at the time Defendant was presenting his case in chief.

*Id.* at 1–2.

■ ¶ 3 When reviewing a motion to set aside a verdict, or motion for judgment notwithstanding the verdict, we must determine whether there is sufficient compe-tent evidence to sustain the verdict. *Birth Center v. St. Paul Companies, Inc.,* 727 A.2d 1144, 1154 (Pa.Super.1999), *appeal granted in part on other grounds,* 560 Pa. 633, 747 A.2d 858 (2000), citing *Johnson v. Hyundai Motor America,* 698 A.2d 631, 635 (Pa.Super.1997), *appeal denied,* 551 Pa. 704, 712 A.2d 286 (1998) (other citations omitted). We must view the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. *Birth Center,* 727 A.2d at 1154, citing *Johnson,* 698 A.2d at 635 (other citations omitted). A judgment notwithstanding the verdict is proper only where the facts are such that no two reasonable minds could disagree that the verdict was improper. *Birth Center,* 727 A.2d at 1154, citing *Johnson,* 698 A.2d at 635. Questions of credibility and conflicts are for the fact-finder; this court will not substitute its judgment based on a cold record for that of the fact-finder on such questions. *Birth Center,* 727 A.2d at 1154–1155 (citations omitted).

■ ¶ 4 In contrast, the grant of a new trial is a matter within the discretion of the trial court. *Kiser v. Schulte,* 538 Pa. 219, 225, 648 A.2d 1, 3 (1994). "An abuse of discretion is not merely an error in judgment; rather it occurs when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Pilon v. Bally Engineering Structures,* 435 Pa.Super. 227, 645 A.2d 282, 285 (1994), *appeal denied,* 539 Pa. 680, 652 A.2d 1325 (1994), *rejected on other grounds in Shope v. Eagle,* 551 Pa. 360, 710 A.2d 1104 (1998).

¶ 5 We certified this case for *en banc* review to address appellant's [1] first issue,

---

1. For ease of discussion, we will refer to plaintiff/appellant Susan Majczyk as "appel-

that the jury's verdict was against the weight of the evidence. The gravamen of this issue is that two of appellee's medical experts "conceded" that appellant was injured in the accident. (Appellants' brief at 19.) It is clear, however, that appellant is seeking compensation for her ongoing pain and suffering from a herniated disk, not for a few days or weeks of discomfort. (Notes of testimony, 6/1–4/99 at 99–108; videotaped deposition of Marc A. Flitter, M.D., 5/25/99 at 24–31 ("Flitter deposition").) Thus, the question before us is whether a jury may find for the defendant despite his or her obvious negligence because it does not believe that plaintiff's pain and suffering, if any, are compensable. We conclude that such a determination is well within the province of the jury. The reasons for our conclusion follow.

¶ 6 In support of her assertion that appellee's medical experts conceded she was injured as a result of the accident, appellant sets forth excerpts from the testimony of John J. Euliano, M.D., who first examined appellant eight or nine days after the accident and examined her again approximately three weeks later. He next examined appellant eight months after the accident. At trial, the defense introduced Dr. Euliano's videotaped deposition in which the following exchange occurred with regard to appellant's condition eight days after the accident:

Q. Okay. As a result of having a history from this lady, and doing a physical examination, and viewing the x-rays that were earlier taken, did you have any impression of what her condition was?

A. Yes. I felt that she was suffering from a cervical strain.

Q. And what—what is a strain? How do you define a strain?

A. A stretching of the muscles and ligaments in the affected area.

Q. Did you suggest any treatment for her?

A. I told her to continue wearing a collar. She had been prescribed a collar in the emergency room. And I gave her an anti-inflammatory in the form of Relafen.

Videotaped deposition of John J. Euliano, M.D., 5/10/99 at 14 ("Euliano deposition"). Appellant relies in part on this exchange to support her claim that appellee's experts conceded she was injured in the accident. What appellant does not include, however, is Dr. Euliano's testimony that when he examined appellant three weeks after the accident, she reported that she was 100 percent better. (*Id.* at 15–16.) Furthermore, when Dr. Euliano examined appellant eight months after the accident, he reported that she was experiencing pain on the right side of her neck and loss of strength in her right arm. (*Id.* at 17.) These complaints differed from her complaints eight days after the accident, when she reported numbness in her left shoulder and in her face. (*Id.* at 7.)

¶ 7 Appellant also relies on the testimony of Daniel Funk, M.D., an orthopedic surgeon who examined appellant's medical records prior to being deposed on May 28, 1999. Although Dr. Funk offered disputed causation testimony on direct as to appellant's more serious surgery, the herniated disk, the following exchange occurred between Dr. Funk and appellant's counsel on cross-examination:

Q. And you are aware, obviously, then, that Susan Majczyk was in a motor vehicle collision on February 25th, 1995. It was a rear-end collision, correct?

A. That's my understanding.

lant."

Q. And can we agree that Mrs. Majc-zyk was injured as a result of that collision, at least to some extent?

A. Define injury.

Q. Well, did she present with symptoms after that that she didn't have before?

A. Yes.

Q. Can we agree with that?

A. Yes.

Q. And the only event that we know in the record that exists to account for that would be the motor vehicle collision, correct?

A. That is correct.

Deposition of Daniel Funk, M.D., 5/28/99 at 37–38 ("Funk deposition").

¶ 8 To support her claim that the jury's verdict was against the weight of the uncontroverted evidence, appellant relies on *Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995), discussed *infra; Craft v. Hetherly,* 700 A.2d 520, 523 (Pa.Super.1997) (medical evidence unequivocally proved that Craft suffered injuries as a direct result of an accident; only dispute was extent and duration of injuries and jury did not reach issue of comparative negligence); *Lewis v. Evans,* 456 Pa.Super. 285, 690 A.2d 291, 293 (1997) (new trial proper where jury found that defendant's negligence was a substantial factor in causing Lewis' injuries but awarded no damages); and *Rozanc v. Urbany,* 444 Pa.Super. 645, 664 A.2d 619, 620 (1995) (new trial required where objective evidence that bones of Rozanc's neck were straighter than normal as a result of acute soft-tissue injury), to support her claim that the verdict was against the weight of the evidence in light of the defense medical experts' "concessions" that she was injured in the accident.

■ ¶ 9 Both our supreme court in *Neison, supra,* and this court in numerous recent decisions have addressed the issue whether the jury may return a verdict for the defendant, or a verdict finding that the defendant's negligence was not a substantial factor in causing the plaintiff's harm, where the defendant's medical expert concedes that the plaintiff sustained *some* injury as a result of the accident. *See, e.g., Kruczkowska v. Winter,* 764 A.2d 627, 631–632 (Pa.Super.2000); *Burnhauser v. Bumberger,* 745 A.2d 1256, 1261 (Pa.Super.2000); *Livelsberger v. Kreider,* 743 A.2d 494, 497 (Pa.Super.1999); *Mano v. Madden,* 738 A.2d 493, 497 (Pa.Super.1999) (*en banc*). The synthesis of these opinions is that where a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause *compensable* pain and suffering, the jury's verdict is against the weight of the evidence where it finds for the defendant.

¶ 10 In a slightly different context, our supreme court recently addressed the meaning of compensable pain and suffering, and the jury's role in determining what is and is not compensable. In *Davis v. Mullen,* 565 Pa. 386, 773 A.2d 764 (2001), Davis claimed he was injured when an automobile driven by Mullen crossed the centerline and crashed head-on into Davis' fully loaded tractor-trailer. The truck traveled up an embankment and turned on its right side. An ambulance took Davis to a local hospital where he was treated and released with a prescription for pain medication. *Id.* at 388–389, 773 A.2d at 765. Davis testified at trial that he was in pain over the weekend, but returned to a ten-hours-per-day, five-to-seven-days-per-week work schedule the following Monday. Twenty days later, however, Davis sought treatment from a chiropractor, complaining of neck and low-back pain and a tingling feeling in his left leg. The chiropractor treated Davis 20 times for a misalignment of the cervical

spine, after which Davis discontinued treatment. *Id.*

¶ 11 When Davis sued Mullen for personal injuries and property damage, Mullen conceded liability but disputed the extent of Davis' injuries. The jury returned a verdict in favor of Davis, but in the amount of his medical expenses and property damage only. As a result, Davis moved for a new trial, claiming the damages were grossly inadequate because the jury did not compensate him for pain and suffering. *Id.* at 385–391, 773 A.2d at 765–766. The trial court denied the motion; however, a divided panel of this court vacated the judgment and remanded for a new trial, following *Dougherty v. McLaughlin,* 432 Pa.Super. 129, 637 A.2d 1017 (1994), and finding the damage award inconsistent with the evidence. *Id.* at 389–391, 773 A.2d at 766, citing *Davis v. Mullen,* 755 A.2d 693 (Pa.Super.2000).

¶ 12 Recognizing that it had promulgated two seemingly conflicting lines of cases, the supreme court in *Davis* sought to reconcile those cases, and held:

> Today, we hold that a jury's award of medical expenses without compensation for pain and suffering should not be disturbed where the trial court had a reasonable basis to believe that: (1) the jury did not believe the plaintiff suffered any pain and suffering, or (2) that a preexisting condition was the sole cause of the alleged pain and suffering.

*Davis, supra* at 391, 773 A.2d at 767.

¶ 13 The *Davis* court then engaged in an extensive analysis of the two lines of cases and pointed out the distinguishing characteristic, the severity of the plaintiff's injuries. *Id.* at 391–394, 773 A.2d at 767–768 (discussing *Todd v. Bercini,* 371 Pa. 605, 92 A.2d 538 (1952); and *Yacabonis v. Gilvickas,* 376 Pa. 247, 101 A.2d 690 (1954), and noting that in both cases, the plaintiffs suffered serious, debilitating injuries, di-

rectly attributable to the accident, that rendered them either unable to return to their previous employment, permanently disfigured, or resulted in a prolonged hospitalization with complications from their injuries).

¶ 14 Next, the *Davis* court discussed the line of cases in which it upheld a jury's award of medical expenses without a corresponding award for pain and suffering. *Davis, supra* at 393–394, 773 A.2d at 768–769 (discussing *Catalano v. Bujak,* 537 Pa. 155, 642 A.2d 448 (1994); and *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988), noting that in both cases, the plaintiffs suffered what the jury could have believed were only minor injuries and apparently disbelieved plaintiffs' claims of more extensive injuries).

¶ 15 Of particular significance to this case, however, was the *Davis* court's summary of its analysis as applied to the facts before it:

> [T]he Superior Court [in this case] foreclosed juries from making essential determinations that are within their purview. Those determinations include, *inter alia,* whether the defendant caused the plaintiff's injuries *and **whether the plaintiff suffered from compensable pain.*** Indeed, the existence of compensable pain is an issue of credibility and juries must believe that plaintiffs suffered pain before they compensate for that pain.

*Davis, supra* at 396, 773 A.2d at 769 (emphasis added) (citations omitted).

¶ 16 A review of our supreme court's decisions in *Neison, supra,* and *Boggavarapu, supra,* further delineates the supreme court's interpretation of the meaning of compensable pain. In *Boggavarapu,* for example, our supreme court instructed that while "there are injuries to which human experience teach-

es there is accompanying pain," including, *inter alia*, the stretched muscle, which a jury may not disregard, *"they are not obliged to believe that every injury causes pain or the pain alleged."* *Boggavarapu*, 518 Pa. at 167, 542 A.2d at 518 (emphasis added). The *Boggavarapu* court then considered the pain of a dog bite followed by a tetanus shot to be transient rubs of life for which the jury could award damages of $42, the cost of emergency room treatment. *Id.*

¶ 17 In *Neison*, in contrast, Neison presented uncontradicted evidence of a violent automobile accident for which Hines conceded negligence. *Neison, supra* at 520, 653 A.2d at 637. Hines' medical expert also conceded that Neison "'exhibited a diagnosis of a healed neck sprain and a healed scapular or shoulder blade sprain.'" *Id.*, quoting the record. Hines' medical expert also opined that recovery from an injury such as Neison's usually takes three to five months. *Id.*

¶ 18 In reaching its conclusion that Neison was entitled to a new trial, our supreme court distinguished the facts before it from the facts in several earlier cases, including *Holland v. Zelnick*, 329 Pa.Super. 469, 478 A.2d 885 (1984), a case in which "the plaintiff was the operator of a motor vehicle struck from behind in an accident consisting of a mere 'bump.'" *Neison, supra* at 526, 653 A.2d at 639,

discussing *Holland*, 478 A.2d at 887. The defendant's medical expert in *Holland* "admitted that a collision from the rear can cause soft tissue injury to the cervical area and that [Holland] may very well have suffered such an injury." *Holland*, 478 A.2d at 888. Nevertheless, this court affirmed the trial court's denial of a new trial, noting that *"[t]he jury was not required to award plaintiff any amount as it obviously believed that any injury plaintiff suffered in the accident was insignificant."* *Id.* (emphasis added).[2]

¶ 19 We find further support that appellant was not entitled to a new trial in *Henery v. Shadle*, 443 Pa.Super. 331, 661 A.2d 439 (1995), *appeal denied*, 542 Pa. 670, 668 A.2d 1133 (1995), a case in which appellants argued that they were entitled to at least nominal damages because the defense medical expert conceded that appellant Charles Henery may very well have suffered some soft tissue injury in the accident at issue in that case. *Id.* at 442. In refusing to grant a new trial, the *Henery* court, like the *Neison* court, cited *Holland, supra*, for the proposition that a jury is not required to award a plaintiff any amount of damages if it believes that any injury plaintiff suffered was insignificant. *Id.*

¶ 20 The *Holland* court relied in part on this court's analysis in *Surgent v. Stein*, 280 Pa.Super. 142, 421 A.2d 445 (1980), a case in which Surgent presented testimony

---

**2.** The *Neison* court also distinguished the facts before it from the facts in *Brodhead v. Brentwood Ornamental Iron Co., Inc.*, 435 Pa. 7, 255 A.2d 120 (1969). In that case, a steel truss being hauled on a tractor-trailer struck the left rear of Brodhead's ·stopped milk truck. Brodhead, who was in the rear part of his truck preparing a load of milk, claimed that the collision caused him to fall forward over the milk cases. As a result, he claimed he suffered from contusions of the head, arm, and elbow, as well as aggravation of preexisting prostate and vascular conditions. *Id.*

at 9, 255 A.2d at 121. The jury returned a verdict for the defendant, however, and the supreme court affirmed, stating "[c]ertainly, the very minimal damage to the milk truck raises grave doubts as to the severity of the impact and supports a finding of no causal relationship between the accident and the injuries." *Id.* at 10, 255 A.2d at 122. As to the evidence of the contusions, which the defendant did not contest, the supreme court observed that a jury can reject even uncontroverted evidence of injury it does not find credible. *Id.* at 11–12, 255 A.2d at 122.

of soft tissue injury that allegedly resulted in eight months of medical care and Surgent's inability to work. On cross-examination, Stein's medical expert testified that he agreed Surgent was hurt in the accident, but disagreed that her injuries required eight months of medical care and resulted in her inability to work. When Surgent sought a new trial claiming the verdict for the defendants was against the weight of the evidence, the *Surgent* court disagreed, following this court's analysis in *Rose v. Hoover*, 231 Pa.Super. 251, 331 A.2d 878 (1974). The *Surgent* court, quoting *Rose*, noted that a jury is not required to believe even uncontradicted testimony and observed that " '[t]he jury could well have concluded that the wage loss claim was not genuine and that the hospitalization and medical expenses were unnecessary.' " *Surgent*, 421 A.2d at 447, quoting *Rose, supra.*

¶ 21 From the foregoing, we conclude that the term "insignificant" as used in *Holland* and cases citing it means the jury could have concluded that any injury plaintiff suffered did not result in **compensable** pain and suffering. We also conclude that in this case, like *Davis, Brodhead, Henery, Holland, Surgent,* and *Rose*, appellant was seeking compensation for an alleged serious injury, her ongoing pain and suffering from a herniated disk, not for a few days or weeks of discomfort. (Notes of testimony, 6/1–4/99 at 99–108; videotaped deposition of Marc A. Flitter, M.D., 5/25/99 at 24–31 ("Flitter deposition").) As a result of the herniated disk and subsequent surgery, which was only partially successful, appellant claims she is still unable fully to perform her job or her housework or to engage in the activities with her children and grandchild she enjoyed before the ac-

cident. (Notes of testimony, 6/1–4/99 at 101–108.)

¶ 22 From his review of appellant's medical records, however, Dr. Funk concluded that appellant's symptoms shortly after the accident were not consistent with disk herniation. (Funk deposition at 14–15, 17–24, 97.) Dr. Funk also opined that appellant's symptoms several years prior to the accident, when she first treated with Charles LaDow, a chiropractor, were consistent with a nerve root injury or pinch, a possible consequence of disk herniation. (*Id.* at 23.) As a result, Dr. Funk opined that appellant's degenerative disk disease predated the accident and subjected her to the same risk of disk herniation after the accident that existed prior to the accident. (*Id.* at 94–98.) Finally, Dr. Funk testified that while appellant had some subjective symptoms in the form of sore muscles after the accident, these symptoms had resolved within three weeks of the accident. (*Id.* at 97–98.)

¶ 23 The jury also had before it evidence that the accident in this case occurred at five miles per hour or less,[3] when appellee's Dodge Neon hit the rear end of appellant's Ford Escort while both were waiting for a traffic light to change on upper Peach Street in Erie. The impact caused no damage to either vehicle. Appellant's husband and appellee both exited their vehicles and exchanged insurance information, after which the parties drove away from the scene. Appellant sought medical treatment the next day.

■ ¶ 24 We recognize that appellant presented contradictory testimony as to the severity of the impact and the extent and duration of her injuries; however, a jury is always free to believe all, part,

---

**3.** Gary Majczyk testified that the accident occurred at two to three miles per hour. (Notes of testimony, 6/1–4/99 at 34.)

some, or none of the evidence presented. *Neison, supra* at 520, 653 A.2d at 637. Thus, while the jury may have concluded that appellant suffered some painful inconvenience for a few days or weeks after the accident, it may also have concluded that appellant's discomfort was the sort of transient rub of life for which compensation is not warranted. *Boggavarapu, supra* at 167, 542 A.2d at 518. By our decision today, we are not suggesting that a jury cannot award pain and suffering damages for minor injuries. Rather, we hold that the determination of what is a compensable injury is uniquely within the purview of the jury. *Davis, supra.* As a result, we find no abuse of discretion in the trial court's refusal to grant a new trial based on the testimony set forth *supra.*

■ ¶ 25 Although this court certified this case for *en banc* review to address appellant's first issue, we must necessarily address her remaining issues, having concluded that the first issue lacks a basis for reversal. In her second issue, appellant claims trial court error in allowing appellee's counsel to cross-examine appellant's treating chiropractor about the possibility that chiropractic spinal adjustments caused appellant's herniated disk. "A trial judge has considerable latitude in determining the scope of cross-examination and his determination will not be reversed in the absence of an abuse of discretion unless a party suffers an obvious disadvantage." *Steinhouse v. Herman Miller, Inc.*, 443 Pa.Super. 395, 661 A.2d 1379, 1384 (1995).

¶ 26 We have reviewed the cross-examination testimony appellant cites, as well as the relevant cross-examination of appellee's expert, Dr. Funk, by appellant's counsel, also cited by appellant. (Notes of testimony, 6/1–4/99 at 199–211; Funk deposition at 132–135.) We have also reviewed appellant's counsel's direct examination of appellant's own expert, Dr. Michael Freeman, on the subject. (Notes of testimony, 6/1–4/99 at 268–269.) From our review, several things are clear. First, appellee's counsel properly sought to impeach Dr. LaDow's testimony concerning the efficacy of his spinal adjustments. Second, Dr. LaDow admitted that chiropractic treatment can inflict disk damage when "long-lever" arm movements are used in the low back, but also testified that those movements are seldom used in chiropractic any more. Dr. LaDow also testified that he did not employ those movements, and that he was unaware of any literature indicating that the techniques he did use could compromise a disk. Furthermore, appellant's counsel, on direct examination of appellant's expert, Dr. Freeman, elicited testimony that disk herniations only occur during chiropractic manipulation when it is done negligently; that the risk is approximately 1 in 300,000; and that evidence in this case indicated that Dr. LaDow did not negligently manipulate appellant's spine because appellant obtained relief from Dr. LaDow's spinal adjustments. Finally, appellee's own expert, Dr. Funk, essentially agreed with Dr. LaDow that there was no evidence in this case linking appellant's herniated cervical disk to Dr. LaDow's spinal adjustments. Assuming *arguendo,* therefore, that the trial court abused its discretion when it allowed the challenged cross-examination, we find no prejudice. If anything, chiropractic manipulation appears to have been ruled out as a cause of appellant's disk herniation.

■ ¶ 27 In her third issue, appellant claims trial court error in refusing to allow appellant's expert, Dr. Michael Freeman, to testify as an epidemiologist. Dr. Freeman is a doctor of chiropractic with a Ph.D. in biostatistics and trauma epidemiology and is also a certified accident

reconstructionist. While Dr. Freeman was permitted to testify as an expert in the fields of accident reconstruction and chiropractic medicine, the trial court sustained appellee's counsel's objection to allowing Dr. Freeman to testify as a trauma epidemiologist on the grounds of relevance. (*Id.* at 229–233.) According to appellant, Dr. Freeman would have testified that low speed rear-end collisions can result in herniated disks. (*Id.* at 230.)

¶ 28 "The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court." *Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 839 (Pa.Super.1999) (citation omitted). "Thus our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law." *Id.* (citation omitted). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.* (citation omitted).

¶ 29 We have reviewed Dr. Freeman's testimony and can find no prejudice to appellant from the trial court's ruling. Dr. Freeman testified extensively as to the effect of low speed rear-end collisions on an individual's cervical disks, noting that some individuals, in particular women with long, slender necks, are more prone to this type of injury. (Notes of testimony, 6/1-4/99 at 233–244.) Dr. Freeman then opined to a reasonable degree of accident reconstruction and chiropractic certainty that the accident at issue in this case caused appellant's disk herniation. (*Id.* at 243–244.) Dr. Freeman based his opinion on his expertise in the aforementioned fields and on his review of appellant's x-rays and MRI studies conducted before the accident, after the accident, and after surgery. (*Id.* at 244–266.) Thus, Dr. Freeman thoroughly addressed the effect of low speed rear-end collisions on cervical disks in general and on appellant's cervical disk in particular. We therefore find no merit to this issue.

¶ 30 In her fourth issue, appellant claims trial court error when it excluded from evidence the re-direct and re-cross-examination of appellee's expert, Dr. Funk, taken during his deposition. According to appellant, this testimony went to the very heart of Dr. Funk's qualifications and credibility as an expert because Dr. Funk admitted he had not performed a cervical fusion since completing his training. (Appellant's brief at 28.) Appellant also claims the trial court violated Pa. R.Civ.P. 4020(a)(4), which provides, "[I]f only part of a deposition is offered in evidence by a party, any other party may require the offering party to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts." Pa.R.Civ.P. 4020(a)(4), 42 Pa.C.S.A.[4]

¶ 31 Once again, we find no reversible error. Neither the quality of nor necessity for appellant's cervical fusion was at issue in this case. Rather, the central issue was whether the accident caused appellant's herniated disk. Dr. Funk's experience performing spinal fusions was therefore irrelevant to his expertise to address this issue. Furthermore, appellant had an opportunity to challenge Dr. Funk's qualifications as an expert in orthopedics and orthopedic surgery during *voir dire*, but did not have any questions as to his qualifi-

4. We agree with the trial court that appellant's argument concerning Rule 4020(a)(4) is waived because it was not raised at trial. *See* Pa.R.Civ.P. 227.1(b)(1) (post-trial relief may not be granted unless the grounds therefor, if then available, were raised at trial).

cations in those fields at that time. (Funk deposition at 11.)

¶ 32 Additionally, we note that on re-direct examination, Dr. Funk testified by way of hypothetical only that the MRI studies conducted after appellant's surgery indicated further degenerative changes in the cervical spine, not at the level of the surgery. (*Id.* at 140–143.) Appellant's counsel then re-cross-examined Dr. Funk and elicited testimony that the surgery itself, in which a portion of the spine is fused, can cause degenerative changes in the adjoining spine. (*Id.* at 145–147.) Appellant's own expert, Dr. Freeman, who is a chiropractor, testified to the same effect, and, as noted *supra,* also testified that the accident caused appellant's herniated disk. (Notes of testimony, 6/1–4/99 at 264–266.) We therefore fail to see why appellant believes Dr. Funk's inexperience perform-ing spinal fusions was relevant to his qualifications as an expert in this case.

¶ 33 For all of the foregoing reasons, we affirm.

¶ 34 Affirmed.