**Tomalyn PETERSON and Thomas Peterson, Her Husband, Appellee,**

v.

**Michael SHREINER, Appellant,**

Superior Court of Pennsylvania.

Argued Dec. 10, 2002.
Filed April 21, 2003.

Girard E. Rickards, Camp Hill, for appellant.

Charles W. Marsar, Harrisburg, for appellees.

Before: JOHNSON, KLEIN and GRACI, JJ.

GRACI, J.

¶ 1 Appellant, Michael Shreiner ("Shreiner"), appeals from an order entered January 18, 2002, in the Court of Common Pleas of Cumberland County granting the motion of Appellees, Tomalyn and Thomas Peterson (the "Petersons"), for judgment notwithstanding the verdict ("JNOV") and a new trial.[1] For the reasons set forth below, we reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 Mrs. Peterson and Shreiner were involved in a motor vehicle accident on January 4, 1999. The facts taken from the trial court opinion follow:

[Mrs. Peterson] reported no injury at the scene of the accident. Her condition, however, deteriorated steadily during the day. She began to get pains in her shoulder, her neck and her right leg. She could not sleep that night because of the pain. The next morning she went to a walk-in clinic and received painkillers and muscle relaxers.

At the time of the accident, Mrs. Peterson had a baking business. Following the accident, the pain began to interfere with her baking endeavors and she began physical therapy. Mrs. Peterson testified that she no longer enjoys her formerly active lifestyle. In fact, she contends that she was eventually forced to give up her baking business.

Opinion and Order, 1/18/02, at 1.

¶ 3 At trial, Dr. Robert Matthews, an orthopedic surgeon, testified as a medical expert on behalf of the Petersons. Dr. Matthews opined that, as a result of the car accident with Shreiner, Mrs. Peterson had suffered soft tissue spinal injuries and an annular tear, and that her prolonged pain and suffering was a direct result of the annular tear. Furthermore, Dr. Matthews stated that he noticed spinal narrowing on Mrs. Peterson's radiological studies taken after the accident in 1999. He testified that spinal narrowing is a degenerative condition, and as a result of the accident the condition was accelerated. Shreiner chose not to call a medical expert witness, relying instead on his cross-examination of Dr. Matthews and other plaintiffs' witnesses. Dr. Matthews conceded on cross examination that Mrs. Peterson's conditions can occur in the absence of trauma and, in her case, could have been caused by a prior automobile accident.

¶ 4 After the close of evidence, the Petersons moved for judgment as a matter of law and requested that the jury be instructed to deliberate on the sole issue of damages. The trial court denied the motion.

¶ 5 The jury's verdict slip dated November 6, 2001 read as follows:

Question 1: Do you find that the defendant [Shreiner] was negligent? [Answer:] Yes.... If your answer is "Yes," go on to Question 2.

---

1. We note that the trial court's decision granting the Petersons' motion for post-trial relief was not reduced to judgment by praecipe of either party as required by Pa.R.A.P. Rule 301. However, "in the interests of judicial economy, we shall 'regard as done that which ought to have been done.'" *McCormick v. Northeastern Bank of Pennsylvania,* 522 Pa. 251, 561 A.2d 328, 330 n. 1 (1989) (citation omitted).

Question 2: Was the defendant's [Shreiner's] negligence a substantial factor in bringing about the plaintiff's harm? [Answer:] No. If you answer Question 2 "No," the plaintiff cannot recover and you should not answer any further questions and should return to the courtroom. . . .

Verdict, 11/6/01, at 1.

¶ 6 Following the verdict, the Petersons renewed their motion for judgment as a matter of law. The Petersons requested the trial court to enter judgment against Shreiner and, additionally, to order a new trial on damages. N.T., 11/6/01, at 282:4–7. The trial court denied the motion without prejudice to the Petersons' right to file written post-trial motions. *Id.* at 283:2–5.

¶ 7 On November 15, 2001, the Petersons filed a motion for post-trial relief challenging the jury's verdict as against the weight of the evidence. The Petersons requested the trial court to enter JNOV on the issue of causation and to order a new trial on the sole issue of damages, or, in the alternative, to set aside the verdict and grant a new trial. The trial court heard arguments and, on January 18, 2002, entered an order granting JNOV in favor of the Petersons on the issue of causation and awarding them a new trial on damages. Shreiner now appeals from the trial court's order.

¶ 8 Shreiner raises the following issues for our review:

A. Did the Petersons waive their contention that the jury was required to find that the injuries were caused by the accident, where they failed to object to jury instructions and the verdict slip which required the jury to determine whether the injuries were caused by the accident, and instructed the jury that they had the right to disregard the expert medical testimony?

  .    .    .    .    .

B. Did the Petersons waive their right to move for judgment notwithstanding the verdict with respect to the causation of injuries, where they failed to move for a directed verdict on the issue of causation of the injuries?

  .    .    .    .    .

C. Did the trial court err in granting a new trial on the basis that the jury must have found that [Mrs. Peterson] suffered "some" injury in direct contravention with recent appellate case law, where the jury could have found that any injury suffered by Mrs. Peterson was insignificant?

  .    .    .    .    .

Brief of Appellant, at 3. We shall only address Shreiner's third issue since we are reversing the decision of the trial court on that basis.

## II. STANDARD AND SCOPE OF REVIEW

■ The decision of whether to grant a new trial is within the sound discretion of the trial court. We will not disturb the trial court's decision unless the court palpably abused its discretion or committed an error of law. In evaluating an order awarding a new trial, we keep in mind that a new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. However, a new trial should not be granted because of a mere conflict in testimony or because the trial judge, on the same facts, would have arrived at a different conclusion.

*Mano v. Madden,* 738 A.2d 493, 495–496 (Pa.Super.1999) (*en banc*) (citations omit-

ted). Although Shreiner's third issue does not directly challenge the award of JNOV in favor of the Petersons, review of that part of the trial court's order is required.

In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must "consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner." ... We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, "the standard of review for an appellate court is the same as that for a trial court."

There are two bases upon which a judgment N.O.V. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Ty–Button Tie, Inc. v. Kincel and Co., Ltd.,* 814 A.2d 685, 690 (Pa.Super.2002), *reargument denied* (citations omitted).

### III. DISCUSSION

¶ 9 Shreiner argues that the trial court, in granting a new trial, applied an incorrect legal standard. He asks us to review the trial court's ruling in light of this Court's decision in *Majczyk v. Oesch,* 789 A.2d 717 (Pa.Super.2001) *(en banc),* which Shreiner contends clarified the legal standard for sustaining a defense verdict in a personal injury suit even where the plaintiff suffered some injury.

¶ 10 In *Majczyk,* plaintiff Susan Majczyk's vehicle was stopped at a traffic light in front of Oesch's vehicle. *Id.* at 719. When the light turned green, Oesch proceeded forward and bumped into Majczyk's vehicle at a speed of less than five miles per hour. *Id.* at 720. Ms. Majczyk claimed to have suffered a herniated cervical disc as a result of the accident while her husband asserted a loss of consortium claim. *Id.* The jury returned a verdict against Majczyk and in favor of Oesch. *Id.* Majczyk's motion to set aside the jury verdict and for a new trial was denied. This Court certified the case for *en banc* review to determine "whether a jury may find for the defendant despite his or her obvious negligence because it does not believe that plaintiff's pain and suffering, if any, are compensable." *Id.* at 721. "We concluded that such a determination is well within the province of the jury," *id.,* and affirmed the trial court's decision.

¶ 11 On appeal, Majczyk relied on a line of cases finding that a jury's defense verdict is necessarily against the weight of the evidence where the defendant's medical experts concede that the plaintiff suffered an injury. *See Neison v. Hines,* 539 Pa. 516, 653 A.2d 634 (1995); *Craft v. Hetherly,* 700 A.2d 520 (Pa.Super.1997); *Lewis v. Evans,* 456 Pa.Super. 285, 690 A.2d 291 (1997); *Rozanc v. Urbany,* 444 Pa.Super. 645, 664 A.2d 619 (1995). In distinguishing these cases from Majczyk's, we noted:

The synthesis of these opinions is that where a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause *compensable* pain and suffering, the jury's verdict is against the weight of the evidence where it finds for the defendant.

*Majczyk,* 789 A.2d at 722 (emphasis original). We concluded that since the de-

termination of the compensability of Majczyk's injury was uniquely within the purview of the jury, the trial court committed no abuse of discretion in refusing to grant a new trial. *Id.* at 726.

¶ 12 The cases analyzed in *Majczyk* are also distinguishable from the instant case. Shreiner neither conceded liability, nor did he present an expert witness who conceded that Mrs. Peterson suffered an injury as a result of the accident. In fact, Shreiner chose not to present any medical expert testimony. The case *sub judice* is also distinguishable from *Majczyk* since the jury, having determined that Shreiner's negligence was not a substantial factor in causing Mrs. Peterson's harm, never reached the issue of compensability. We rely instead upon this Court's recent decision in *Andrews v. Jackson*, 800 A.2d 959 (Pa.Super.2002), *appeal denied*, 813 A.2d 835 (Pa.2002), for guidance.

¶ 13 In *Andrews*, the jury determined that Jackson was negligent but also found that his negligence was not a substantial factor in causing Andrews' injuries. *Id.* at 961. The jury awarded Andrews zero damages. *Id.* Andrews filed a motion for new trial arguing that the jury's verdict was contrary to the weight of the evidence. The trial court granted a new trial on the issue of damages since, as in *Majczyk*, both parties' medical experts had agreed that Andrews suffered some injury as a result of the accident. We affirmed for the same reasons set forth in *Majczyk*, namely that "[i]t is impermissible for a jury, in a personal injury case, to disregard the uncontroverted testimony from the experts for both parties that the plaintiff suffered some injury as a result of the accident in question." *Id.* at 963, *quoting Mano v. Madden*, 738 A.2d 493, 497 (Pa.Super.1999) (*en banc*).

¶ 14 Notwithstanding our affirmance of a new trial order in *Andrews*, we find the

discussion of the caselaw presented therein to be persuasive here. Particularly relevant are two cases discussed in our *Andrews* opinion: *Henery v. Shadle*, 443 Pa.Super. 331, 661 A.2d 439 (1995) and *Holland v. Zelnick*, 329 Pa.Super. 469, 478 A.2d 885 (1984).

> In *Henery* and *Holland*, the experts for both sides disagreed that the accidents in question caused the soft tissue injuries alleged. Although the defense experts in both cases conceded that a soft tissue injury "could have" or "may have" been caused by the accidents, neither expert conceded the accident actually caused any soft tissue injuries. Thus the juries in *Henery* and *Holland* were justified in finding the accidents did not cause the plaintiffs' injuries, as this finding did not contradict a consensus among the medical experts that the accident caused some injury.

*Andrews*, 800 A.2d at 963.

¶ 15 Also instructive is *Davis v. Mullen*, 565 Pa. 386, 773 A.2d 764 (2001) (cited with approval in *Andrews*, at 963). In *Davis*, a jury awarded the plaintiff damages for his medical expenses and property losses but not for pain and suffering. *Id.* at 766. The trial court denied the plaintiff's motion for a new trial. *Id.* This Court vacated the judgment and remanded for a new trial after determining that the jury's damage award was inconsistent with the evidence presented. *Id.* Our Supreme Court reversed our decision and reinstated the verdict, finding that "the trial court properly exercised its discretion when it denied Davis' motion for a new trial because there was a reasonable basis for the jury [to] believe: (1) that Davis did not suffer pain and/or (2) that his alleged injury was not caused by the negligence of the defendant." *Id.* at 770. The Court reiterated that certain essential determinations are within the purview of the jury, including "whether the defendant caused the plain-

tiff's injuries and whether the plaintiff suffered from compensable pain." *Id.* at 769. *See also Kennedy v. Sell,* 816 A.2d 1153 (Pa.Super.2003) (affirming defense verdict where defendant presented no medical expert, relying instead on impeachment of plaintiff's expert, and jury found defendant's negligence was not a substantial factor in causing plaintiff's harm).

¶ 16 In the case at bar, although the Petersons were the only party to call a medical expert, there was simply no "concession" by the defense that Mrs. Peterson suffered some injury as a result of the accident. Whereas in *Henery* and *Holland, supra,* conflicting expert testimony was presented by both sides, here Shreiner's cross-examination of the Petersons' expert created the same kind of conflict. Our review of Dr. Matthews' testimony reveals numerous statements that were, in all likelihood, damaging to his credibility with the jury. Dr. Matthews first examined Mrs. Peterson on October 19, 2001, nearly three years after the accident in question. N.T., 11/5/01, at 61:4–5. He testified that, in his opinion, Mrs. Peterson sustained an annular tear of a cervical disk, other spinal injuries, and a mild right spastic scoliosis as a result of the accident. *Id.* at 71:17–19; 73:7–9; 79:10–11. Dr. Matthews conceded on cross-examination, however, that a degenerative disc disease such as that presented by Mrs. Peterson can occur in a person in the absence of trauma. *Id.* at 94:17–19. Dr. Matthews also conceded that spondylosis or arthritis, also exhibited by Mrs. Peterson, can occur in the absence of trauma and can cause the same symptoms of which she was complaining. *Id.* at 96:8–98:5. Dr. Matthews admitted that Mrs. Peterson's scoliosis was present in an x-ray dated August 25, 1998, months before the accident with Shreiner. *Id.* at 81:5–8. Dr. Matthews discussed two reports he authored concerning Mrs. Peterson's injuries, causation, diagnosis and treatment. He indicated that the opinions contained in the first report, dated one week before he even examined Mrs. Peterson, were based on her medical records from January, 1999 through September, 1999 as well as on information supplied by her attorney. *Id.* at 79:19–23; 85:10–87:25. Dr. Matthews admitted that most of the information he relied upon regarding Mrs. Peterson's symptoms and physical condition was obtained through a history provided by Mrs. Peterson herself. *Id.* at 98:6–11. Dr. Matthews also never reviewed records from accidents in which Mrs. Peterson was involved prior to 1998. *Id.* at 98:17–20.

¶ 17 Based upon the foregoing, we find there was substantial evidence that could have led the jury to disregard Dr. Matthews' opinion in its entirety. The jury, in its role as fact-finder, was "free to believe all, some, or none of the testimony presented by a witness." *Neison,* 653 A.2d at 637. The jury presumably decided not to believe Dr. Matthews' opinion and, on this record, the jury's rejection of that evidence was justifiable.

¶ 18 In its opinion, the trial court clearly, and erroneously, announced that it would have arrived at a different conclusion based upon the evidence presented, particularly the testimony of Dr. Matthews.

> First, defense counsel attempted to attribute [Mrs.] Peterson's injuries to a prior car accident. However, Dr. Matthews refuted this suggestion and stated that [Mrs.] Peterson was completely healed from her injuries prior to the accident on January 4, 1999. Dr. Matthews explained that she suffered a torn muscle in the prior accident because the injury healed within six weeks and she did not miss time from work.
>
> Second, defense counsel attempted to have Dr. Matthews concede that the degenerative disc disease and the symptoms from which [Mrs.] Peterson com-

plains, can occur in a person in absence of trauma. While conceding that this condition can result absent trauma, Dr. Matthews further testified that in [Mrs.] Peterson's case, this could not happen absent trauma. Dr. Matthews explained that if she were fifty-five or older she may have some of these symptoms but she is forty-one years old and, therefore, the projection is different.

.    .    .    .    .

To say, however, that Ms. Peterson did not suffer a business loss is one thing. To say that the defendant's negligence resulted in no harm at all is quite another. Inasmuch as the jury reached the latter conclusion, we are satisfied that the judicial process has worked an injustice upon the plaintiff. The uncontradicted evidence overwhelmingly supports the contention that the defendant was responsible for the accident and that injury to the plaintiff resulted. We will, therefore, grant a new trial on the sole issue of damages.

Opinion and Order, 1/18/02, at 3–4.

¶ 19 The trial court's assertion that the Petersons' evidence was uncontradicted is belied by our own analysis of Dr. Matthews' testimony, set forth above, as well as by the court's own summarization of that testimony. The trial court overstepped its authority by effectively substituting its judgment for that of the jury with respect to the weight to be accorded Dr. Matthews' opinions. In light of this abuse of discretion, we must reverse the order of the trial court awarding a new trial.

¶ 20 The trial court also committed reversible error by entering JNOV in favor of the Petersons on the issue of causation. Viewing the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to Shreiner as the verdict winner, we find ample support for the jury's determination that

Shreiner's negligence was not a substantial factor in bringing about Mrs. Peterson's harm. We reiterate that this determination was one lying within the purview of the jury. *Davis,* 773 A.2d at 769.

¶ 21 Based upon the foregoing analysis, we reverse the order of the trial court granting JNOV in favor of the Petersons and awarding them a new trial. The jury's verdict in favor of Shreiner is reinstated.

¶ 22 Order reversed; verdict reinstated.