J-A08002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JASON ZIMMERMAN (N/K/A BROOK ZIMMERMAN) | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2607 EDA 2024 |
| LORI ZIMMERMAN (N/K/A LORI RUKAVINA) | : | |

Appeal from the Order Entered August 28, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2021-15020

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED AUGUST 25, 2025**

Jason Zimmerman, n/k/a Brook Zimmerman (Brook) appeals *pro se* from the order, entered in the Court of Common Pleas of Montgomery County, enforcing a charging lien filed by her former counsel, Randi L. Rubin, Esquire. We reverse.

Brook retained the law firm of Royer Cooper Cohen Braunfeld LLC (RCCB) to represent her in divorce proceedings.  The trial court opinion ably sets forth the subsequent developments in its order[1] enforcing the lien:

> On May 24, 2022, Brook executed an Engagement and Fee Agreement ("Agreement") with Attorney Rubin, counsel with RCCB, agreeing to represent Brook in her divorce and custody

---

[1] The trial court filed a formal Pa.R.A.P. 1925(a) opinion on November 19, 2024, requesting that this Court look to the August 28, 2024 order for the reasons in support of its ruling.  We therefore refer to that order as the trial court opinion.

proceedings under the above caption. Pursuant to the terms of the Agreement, Brook agreed to pay bills sent to her from RCCB within 30 days. If the bills for legal services and costs were not timely paid, RCCB reserved the right to charge interest for non-payment of over 30 days. If RCCB had to institute legal action for collection of attorneys' fees and costs involved in bringing such action, it had the right to receive reasonable attorneys' fees and costs in bringing such action. RCCB also reserved the right to terminate the attorney/client relationship for nonpayment of fees/costs.

The testimony and legal bills submitted into evidence established that Attorney Rubin rendered substantial legal services during the course of her representation of Brook in her divorce and custody proceedings. Brook was regularly billed for the legal services on a monthly basis and she never objected to or disputed any of the billings. The accounts receivable and collection[s] supervisor from RCCB testified that Brook made no payments toward her outstanding bill from January 2023 through July 2023, when she made a payment of $2,491.[00]. Although RCCB [] offered Brook a payment plan for the outstanding balance still owed at that time, she did not attempt to set up such a payment plan with RCCB. Thereafter, due to a breakdown of the attorney/client relationship, Attorney Rubin terminated her representation of Brook in the custody and divorce proceedings and filed a Notice of Attorney's Charging Lien on December 15, 2023.

Trial Court Opinion, 8/28/24, at unnumbered 1-2 (footnote omitted).

The trial court held a hearing on August 22, 2024. Attorney Rubin called, as witnesses, Beth Biltonen-John, RCCB's accounts receivable and collections supervisor, as well as Brook, who represented herself. The trial court issued the findings as quoted and entered an order enforcing the lien for the full amount requested of $5,262, plus $2,500 in attorney's fees. Brook timely filed a notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. Brook raises the following issues on appeal:

1) Did [Attorney] Rubin have the right to pursue special relief and a charging lien in civil court without exhausting standard avenues of fee dispute and collection?

2) If so[,] did [Attorney] Rubin meet the requirements to enforce a charging lien?

a) Was her work substantial[ly] or primar[il]y [responsible for] the creation of the fund?

b) Did her fee agreement spell out in clear and concise language her right to a charging lien?

c) If none of her work was shared or used to create the fund should it be considered?

3) Can fees and cost[s] be added to a charging lien that were not accrued for the creation of the fund?

4) Was there a conflict of interest for the presiding judge?

a) Should the Hon. Judge Wall have presided over a lien case involving Brook Zimmerman when she is the Judge assigned to Brook Zimmerman's custody?

b) Should the Hon. Judge Wall have presided over a lien case when she had admitted bias towards [Attorney] Rubin[']s correctness and professionalism?[2]

_____

[2] Due to our disposition, we need not address this claim. However, we note that the trial judge did not admit bias. Brook references the preliminary discussion of this matter, wherein Brook stated that the attorney she retained after Attorney Rubin withdrew had proof that he requested Attorney Rubin's file in writing. Attorney Rubin denied the charge. The trial judge responded, "I've known Ms. Rubin for 30 years . . .. And I've never known her to misrepresent anything to the [c]ourt at all." N.T. Hearing, 8/22/24 at 14. The trial court added, "[Your attorney] may have told you that, but do you have anything?" *Id.* at 15.

The trial court's comment does not indicate bias, and we add that the trial court arranged to have the attorney testify via phone. That attorney testified that his secretary contacted Attorney Rubin's firm to request the file, but did not have any documentation. Thus, the trial court did not blindly accept Attorney Rubin's representations and provided Brook with an opportunity to prove her complaint.

Appellant's Brief, at 5-6.

"We review decisions relating to charging liens for [an] abuse of discretion." **Smith v. Hemphill**, 180 A.3d 773, 777 (Pa. Super. 2018). The trial court abuses its discretion where it overrides or misapplies the law, its judgment is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill-will. **Majczyk v. Oesch**, 789 A.2d 717, 720 (Pa. Super. 2001). We begin with Brook's second issue, as it is dispositive of this appeal.

In **Recht v. Urb. Redevelopment Auth. of City of Clairton**, 168 A.2d 134, 137 (Pa. 1961), our Supreme Court examined several cases involving charging liens and developed the following five factor test:

> A review of these authorities illustrates that before a charging lien will be recognized and applied, it must appear (1) that there is a fund in court or otherwise applicable for distribution on equitable principles, (2) that the services of the attorney operated substantially or primarily to secure the fund out of which he seeks to be paid, (3) that it was agreed that counsel look to the fund rather than the client for his compensation, (4) that the lien claimed is limited to costs, fees or other disbursements incurred in the litigation by which the fund was raised and (5) that there are equitable considerations which necessitate the recognition and application of the charging lien.

**Id.** at 168.

The basic thrust is that a charging lien depends "upon the favor of the court in protecting attorneys, as its own officers, by taking care . . . that a party should not run away with the fruits of the cause" without paying the attorney. **Austin v. Thyssenkrupp Elevator Corp.**, 254 A.3d 760, 766 (Pa. Super. 2021) (quotation marks and citation omitted). As indicated by the

conjunctive nature of the test, the moving attorney must establish all five factors.  **Hemphill**, 180 A.3d at 777 ("Under these circumstances, [the attorney] satisfies the first, second, third and fifth **Recht** elements for a charging lien relating to his fee in this case. . . . This leaves the fourth **Recht** element for consideration.").

Here, we conclude that Brook is correct that the third factor was not established.  Briefly, Brook cites for persuasive value our decision in **Sawyer v. Taylor**, 3116 EDA 2022 (Pa. Super. filed August 16, 2023) (unpublished memorandum decision),[3] a case that involved an attorney obtaining a lien to pay legal fees in a divorce case.  There, "the written fee agreement explicitly provide[d] consent for the . . . charging [l]ien," whereas the Agreement here does not.  **Id.** at 12.  We agree with Attorney Rubin that "having such language in a contract is not a *sine qua non* for the court to exercise its inherent equitable power and make awards that are just and correct."  Appellee's Brief, at 15.  Contractual language may be a sufficient condition, but not a necessary one.

This does not resolve the issue, however, because there must be other proof that an agreement existed to look to the fund.  **See Turtle Creek Bank & Tr. Co. v. Murdock**, 28 A.2d 320, 322 (Pa. Super. 1942) ("We think . . . that it may be legitimately inferred from what is stated therein that Murdock and his attorneys agreed, as Murdock had no money, that the attorneys' fees

_____

[3] An unpublished decision filed after May 1, 2019 may be relied upon for its persuasive value.  **See** Pa.R.A.P. 126(b).

would be paid from the real estate, or in the event of its sale, from the proceeds thereof."). Brook argues in her brief that no agreement existed, contractual or otherwise. Appellant's Brief, at 7-8 ("[Attorney] Rubin's fee agreement . . . makes no reference to a charging lien. Nor were there any other communications informing or giving permission for such an action.").

Few cases have discussed this factor. The **Sawyer** decision quoted from an opinion issued by the Pennsylvania Bar Association Legal Ethics and Professional Responsibility Committee for background material concerning charging liens. Another portion of that opinion suggests that the reason for the lack of case law is that the typical charging lien case involves a contingency fee arrangement, which naturally lends itself to an agreement to look to the fund.

> The attorneys' charging lien most often is used in contingent fee arrangements, and particularly in personal injury actions. In such cases, the lawyer has agreed not to charge the client on an hourly basis, but rather to look to the proceeds of the case, whether by way of verdict or settlement, for payment of the fee and for reimbursement of advanced costs and expenses. The charging lien is not, however, limited to personal injury or contingent fee claims.

Ethical Considerations In Attorneys' Liens, 2006 WL 4590880, at *3.

We agree with Brook that there are no other indications of an agreement between the parties that Attorney Rubin would look to the fund for payment. As the trial court opinion states, Attorney Rubin charged Brook on an hourly basis, and Brook was required to make monthly payments under the Agreement. This alone tends to show no other agreement existed to look to

the fund for payment. Indeed, the **_Recht_** case indicates that a demand for payment in advance of the fund's creation precludes enforcement of a charging lien. In that case, J.B. Nicklas, Jr., Esquire, did not obtain a contractual agreement to render legal services for Herman Recht. Attorney Nicklas nonetheless represented Recht in eminent domain proceedings and secured an award for Recht's share of the property. Recht chose to appeal and obtained a greater sum; Attorney Nicklas did not represent him in those proceedings. Attorney Nicklas submitted a bill of $750.00 to Recht, who refused to pay. Attorney Nicklas then filed for a charging lien against the judgment awarded to Recht.

After establishing the five-factor test, the **_Recht_** Court concluded that Attorney Nicklas had no right to a charging lien because the fund was created as a result of the _de novo_ trial and not his work. The Court separately concluded that the third factor was not met.

> A further examination of the record fails to disclose any indication, averment, or conclusion that there was any agreement between Attorney Nicklas and Recht that counsel would look to the fund for his compensation. The only statement in the record in that regard is the finding and conclusion of the court below that the fee claimed by Attorney Nicklas for his services was just and reasonable. **An agreement to look to the fund for compensation is essential to the recognition of a charging lien** and this requirement is not satisfied by a finding of the court that the fee or amount claimed is just and reasonable. **The record indicates that no such agreement ever existed and this conclusion is buttressed by the fact that Attorney Nicklas submitted a bill to and demanded payment of Recht prior to the creation of the fund** secured in the jury trial.

*Recht*, 168 A.2d at 139–40 (emphases added). The case for no agreement existing is even stronger here, since Attorney Rubin both demanded and received some payments during her representation and before the fund was created.[4]

Finally, the *Recht* Court's survey of cases included *Seybert v. Salem Twp.*, 22 Pa. Super. 459, 460 (Pa. Super. 1903), wherein the client, Daniel F. Seybert, discharged Attorney T.R. Martin before trial. "No agreement whatever was made for payment of [Attorney Martin]'s services in the case, nor was there any stipulation as to how or when [he] would be paid." *Id.* at 460. Seybert hired a new attorney, who secured an unspecified monetary verdict that was held by the new attorneys pending resolution of Attorney Martin's request for $500.00 from the fund. The *Seybert* Court held that the fund could not be subject to a lien as it "is neither in the attorney's possession, nor within the grasp of the court." *Id.* at 462. The panel added that the equitable remedy was additionally unavailable due to the absence of an agreement:

> And as matter of fact, bearing on the attorney's right of recourse to it, according to the appellee's own testimony there was no

---

[4] We need not address whether direct payment from the client otherwise precludes a charging lien. We note that at least one federal court has interpreted Pennsylvania law to require that the fund must be the sole means of payment. *Matter of Indep. Pier Co.*, 210 B.R. 261, 266 (E.D. Pa. 1997) (Rendell, J.) ("I find that I need only determine whether the agreement reflects an understanding that Dechert would look *solely* to the fund—or to the fund *rather than* to the client—for payment. This is the requisite inquiry as outlined in *Recht,* derived from the Pennsylvania case law.") (emphases in original).

agreement or provision of any kind for payment of his fees. So far as we can ascertain from the record before us, the relation of the appellee and the appellant was simply that of debtor and creditor when the attorneys who finally recovered the money took charge of the case, and the fund now aimed at was created.

*Id.* at 462. The relationship between Brook and Attorney Rubin is that of debtor and creditor following Attorney Rubin's termination of their relationship.

Attorney Rubin emphasizes that she performed legal services and deserves payment. *See* Appellee's Brief, at 16 (quoting case law regarding the interest of the courts in protecting attorneys); N.T. Hearing, 8/22/24, at 121 ("[Attorney Rubin]: The right of an attorney to do a charging lien upon a fund in court or otherwise . . . is an equitable issue. And it's based on the interest of the courts in protecting attorneys[.]"). There is no doubt that Brook owes Attorney Rubin, as she conceded that point. *Id*. at 145 ("I am not saying I don't owe her money."). Regardless, we do not interpret the law to authorize elevating this equitable consideration over the need to establish all five factors of the *Recht* test. Indeed, equitable considerations are explicitly incorporated within the fifth *Recht* factor, which textually suggests that those considerations are confined to that factor. *See Austin*, 254 A.3d at 767 (acknowledging valid equitable considerations for the fifth factor include "potential depletion by creditors, a client's insolvency, a client's attempt to defraud an attorney, and an attorney's inability to enforce a contingency agreement"). In other words, no matter how compelling the equitable case for the lien, Attorney Rubin must establish all five factors.

Finally, we note that Attorney Rubin's appeal to the equities ignores the competing concern that trial courts should not become unnecessarily embroiled in factual disputes when deciding whether to enforce a charging lien. In another of the cases cited by *Recht*, our Supreme Court agreed that the court in equity "has power to direct the payment of reasonable counsel fees out of a fund for distribution, when the fund is the product of the attorney's labors, and he has agreed to look to it solely for compensation." *Quakertown & E. R. Co. v. Guarantors' Liab. Indem. Co. of Philadelphia*, 55 A. 1033, 1034 (Pa. 1903). There was no agreement in *Quakertown* that the attorney would look to the fund for compensation. "There is, therefore, no apparent reason why the court should be called upon to interfere in any extraordinary way for his protection." *Id.* at 1034. The Court stated that the attorney had other remedies, and in the absence of an agreement to look to the fund "we see no reason why he should not be required to establish the amount of his claim before a jury, as other litigants whose claims are disputed are required to do." *Id.*

Here, Brook disputed the validity of some of the bills and argued that she did not owe $2,863.50 of the $5,262.00 sought. *See* N.T. Hearing, 8/22/24, at 86 ("[The court]: But then you're saying basically that we have an argument of $2,863.50. Is that what you're saying you don't owe?" [Brook]: Yes, Your Honor."). While the trial court received extensive testimony on the bills submitted by Attorney Rubin and we credit its patience and willingness to overlook Brook's procedural missteps given her *pro se*

status,[5] the need to establish all five factors minimizes the chances that a trial court will be dragged into resolving garden-variety contractual disputes when considering a request for a charging lien.[6]

Our decision today does not mean that we believe Brook owes nothing to Attorney Rubin. We merely disagree with the trial court and Attorney Rubin that equitable considerations serve to override all other factors. *See*, *e.g*, *id.* at 121 ("I'm just going to play Devil's advocate here and say there's no charging lien. Okay, she can't get a charging lien. You still owe her the money."). A failure to pay will be present in any request for a charging lien, as will the corresponding interest in ensuring attorneys are paid for their work. Because Attorney Rubin failed to establish that the parties would look to the fund for payment, we agree with Brook that the trial court erred in enforcing the lien. The trial court therefore misapplied the law and concomitantly

_____

[5] Specifically, the trial court's opinion points out that Brook's failure to file a pretrial statement in advance of the hearing, as ordered by the court, alone justified enforcing the lien pursuant to Montgomery County local rules. **See** Trial Court Opinion, 8/28/24, at 2. We decline to affirm the order on this alternative basis, as the trial court overlooked the error and held a full hearing. Thus, the trial court did not grant relief on procedural grounds, and Brook had no occasion to argue the effect of her failure to follow the local rules.

[6] We do not agree with Brook that resorting to other venues is necessary before a lien may be sought. If Attorney Rubin had established all five **Recht** factors, the trial court could authorize the lien. "While . . . alternative dispute resolution methods may be available, we conclude this does not preclude [counsel] from seeking an attorney's charging lien as permitted by our Supreme Court." **Austin**, 254 A.3d at 768 n.6.

abused its discretion.[7]   **Smith**, **supra**; **Majczyk**, **supra**.   We therefore reverse.

Order reversed.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/25/2025

---

[7] As this determination suffices to resolve the case, we do not address Brook's other issues.