## Abuhadba v. Schena

C.P. of Monroe County, no. 1866 CV 2006.

*John M. Mulcahey,* for plaintiff.
*Phillip M. Farber,* for defendant.

ZULICK, *J.,* December 3, 2010—

## SUPPLEMENTARY OPINION PURSUANT TO Pa.R.A.P. 1925(a)

The Superior Court of Pennsylvania remanded this case on November 5, 2010, by order directing this court to enter judgment and to apply a "weight of the evidence" standard of review. Specifically, the Superior Court instructed that judgment be entered in order to perfect Ms. Abahadba's premature appeal. See Pa.R.A.P. 905(a)(5); *Pusi v. Means*, 982 A.2d 550, 552 n.1 (Pa. Super. 2009) (observing that under Pennsylvania's appellate rules, an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment). It also instructed the court to consider plaintiff Rana Abuhadba's ("Ms. Abuhadba") motion for post-trial relief applying the weight of the evidence standard of review described in *Commonwealth v. Widmer*, 560 Pa. 308, 320, 744 A.2d 745, 752 (Pa. 2000) (holding that in a weight of evidence claim a trial court is not obligated to view evidence in light most favorable to verdict winner).

This is a personal injury action arising from an automobile collision that occurred when defendant Louis Schena ("Mr. Schena") struck the rear of Ms. Abuhadba's vehicle on February 17, 2005. Ms. Abuhadba claims chronic injuries to her head, neck, and back as a result of the collision. A jury trial was held on December 2-3, 2009. Mr. Schena conceded negligence but disputed Ms. Abuhadba's injuries. The jury entered a zero verdict for past medical expenses, future medical expenses, and pain and suffering. The verdict was unanimous. Ms. Abuhadba filed a motion for post trial relief on December 4, 2009.

When that was denied, she filed an appeal, which has resulted in a remand to this court for the reasons stated.

## DISCUSSION

In ruling on a weight of evidence challenge, the trial court

> [n]eed not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in doing so evaluate for itself the credibility of the witnesses. If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial and submit the issues for determination to another jury. *Widmer* at 752 n.3 (citing *Tibbs v. Florida*, 457 U.S. 31, 38 n. 11, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)).

The trial court must inquire as to whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* at 752 (citation omitted). It is the trial court's sense of justice that must be shocked before a new trial may be granted on a challenge that the verdict is against the weight of the evidence. *Commonwealth v. Sullivan*, 820 A.2d 795, 807 n. 11 (Pa. Super. 2003)(citing *Commonwealth v. Brown*, 538 Pa. 410, 438, 648 A.2d 1177,1191 (Pa.1994)). "[A] ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Widmer*,

744 A.2d at 753 (citing *Brown*, 648 A.2d at 1189)).

"A new trial should be granted only where the verdict is so contrary to the evidence as to shock one's sense of justice [and not] where the evidence is conflicting [or] where the trial judge would have reached a different conclusion on the same facts." *Davis v. Mullen*, 565 Pa. 386, 390, 773 A.2d 764,766 (Pa. 2001) (citing *Henery v. Shadle*, 661 A.2d 439,441 (Pa. Super. 1995)).

"[A] jury verdict is set aside for inadequacy when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Davis*, 773 A.2d at 766 (citations omitted). A "reversal on grounds of inadequacy of the verdict is appropriate only where the "injustice of the verdict [stands] forth like a beacon." *Id.* (citations omitted).

Ms. Abuhadba argues that "the jury's failure to make an award bore no reasonable relationship to the loss suffered by Appellant." Appellant's Pa.R.A.P 1925(b) statement, page 3. The jury apparently did not believe Ms. Abuhadba's testimony of pain and suffering and did not find that the expert medical testimony provided a basis to award a more substantial verdict. Ms. Abuhadba argues that this result "was against the great weight of the evidence, and the verdict truly shocks one's sense of justice...." *Id.*

As I observed in my statement to the Superior Court issued pursuant to Pa.R.A.P. 1925(a), the determination of the significance of Ms. Abuhadba's injuries was a

hotly contested subject before the jury. The jury heard testimony from Ms. Abuhadba and each of the party's medical experts.[1] The experts agreed that Ms. Abuhadba had suffered some injury as a result of the collision. However, they disagreed as to the extent of this injury. Ms. Abuhadba's medical expert retained for purposes of the litigation opined that she would have $1.8 million in future medical expenses. None of Ms. Abuhadba's treating physicians testified.

Dr. Berger, the medical expert for the defense, testified that Ms. Abuhadba had a slightly diminished range of motion in her neck. Dr. Berger's deposition, page 17. He also testified to tenderness in the neck, but no spasms. *Id.* Dr. Berger noted that Ms. Abuhadba had complaints of back pain before the collision and that she had signs of degeneration and desiccation of discs, which lead him to determine that her back injuries[2] were not a result of

---

1. The court's ability to review and cite to the record is diminished because the DVD and the transcript of plaintiff's medical expert's deposition which was used at trial were not introduced as exhibits. There is a transcript of the deposition of the plaintiff's medical expert, Dr. Gentilezza, attached to the defendant's brief in support of a motion in limine as exhibit "C".

Counsel for the defendant had a DVD-recording of the deposition of Dr. Berger entered into evidence, see defendant's Exhibit 11, but did not have an accompanying transcript of the deposition entered as an exhibit. A partial transcript of the Berger deposition is attached to the plaintiff's motion for post-trial relief as exhibit "A". Where I am unable to cite to the Berger transcript because it is not in the record, I cite to the elapsed time of the DVD-recording instead ( defendant's exhibit 11).

2. Ms. Abuhadba introduced several MRIs, including slides and a radiologist's impressions, done as part of diagnostic studies of her back and neck pain. See plaintiff's exhibits 4-10. Dr. Berger reviewed the studies, including the MRI films and the radiologist's impressions of them. Dr. Berger's deposition, page 22.

From the MRIs of her lumbar spine, the radiologist had interpreted herniation of Ms. Abuhadba's L5-S1 disc from the June 24, 2005 MRI and another (new) herniation at the follow-up MRI performed October

the collision. *Id.* at 22-23, 25. He determined that Ms. Abuhadba had reached maximum medical improvement, especially since the collision occurred three years ago. *Id.* at 24. Dr. Berger opined that the type of injury suffered usually heals in three to six months. *Id.*

Dr. Berger performed an independent examination of Ms. Abuhadba. He testified to the following related to that examination:

[I] performed a series of tests in the standing position which are known as *Waddell's* tests. These tests are designed to elicit signs of symptom magnfication. And what that means is, we perform a series of maneuvers with a patient standing up that we know do not elicit any stress on the low back, and if a person responds that they have pain during the performance of those tests, it just brings into some question whether or not they are magnifying symptoms. In her case, the three [tests] that I did she was positive two out of the three, so that's a mildly positive test in my opinion." Defendant's exhibit 11, 16:19-16:55.

This testimony from Dr. Berger, based on his personal examination of the plaintiff, undermined Ms. Abuhadba's

---

30, 2007. Dr. Berger's deposition, pages 47-48. From the MRIs of Ms. Abuhadba's cervical spine, the radiologist had interpreted disc bulge at C45 and C56 and at the follow-up MRI on November 5, 2007 disc herniations at C45, C56 and C7 T1. defendant's exhibit 11, 44:15-50:00.

Based on review of the MRI slides and radiologist's impressions, Dr. Berger concluded that Ms. Abuhadba's injuries — including the worsening of her condition identified at the follow-up MRIs — was caused by a degenerative back condition and not the collision with Mr. Schena. Dr. Berger's deposition, pages 22-23, 25.

claims of pain.

Ms. Abuhadba testified extensively about her injuries, pain, and medical treatment. However, defense counsel's cross examination of Ms. Abuhadba revealed several glaring inconsistencies between her trial testimony and deposition. The plaintiff admitted that prior to the accident she had seen a doctor for low back pain and headaches, specifically migraines. NT 50-52. On direct examination, Ms. Abuhadba attempted to explain (or explain away) her pre-accident back pain by attributing it to an ovarian cyst. NT 32. On cross examination, however, Ms. Abuhadba admitted that her medical records show no mention of an ovarian cyst. NT 51. She also admitted that the records make no reference to her being referred to an OB-GYN for ovary-related complaints. NT 51.

Ms. Abuhadba answered "I don't remember" or "I don't recall" to many questions involving the collision and her later medical treatment at her deposition, but during her testimony she answered with specifics about times, dates, and treatment. NT 60-68. For example, when defense counsel pointed out her answer during her deposition, she testified as follows:

Q: Do you have a recollection of your vehicle moving at all as a result of being hit from behind?

A: "I don't remember."

A: Correct

Q: Yet, today you're saying you now remember that your vehicle was moved as a result of the impact.

A: Yes, it did. NT 62.

Ms. Abuhadba claimed she remembered most of the information at trial because she had reviewed the medical records and discussed the accident in preparation for trial. NT 68-69.

Ms. Abuhadba testified about the types of treatment she received. She went to physical therapy 18 times in 2005 starting a few months after the accident. NT 71. She had not obtained physical therapy since 2005. NT 77. She also testified that she saw another doctor four times in 2005 and a pain management specialist once. NT 75-76.

Ms. Abuhadba became pregnant in October 2005 and stopped any type of medical treatment with her previous doctors. NT 77, 79. She gave birth in June 2006. NT 85. She became pregnant with her second child in November 2006 but did not receive treatment during the interim. NT 85. There was another break in treatment from July 2007 to October 2007. NT 83. She received a second facet block almost three years after the first following these breaks in treatment. NT 84. Ms. Abuhadba had not been prescribed any additional treatment or physical therapy in 2009. NT 89. However, she did testify that she had some additional tests scheduled. NT 93.

This sporadic treatment, punctuated by long gaps, served to cast doubt on the severity of the injuries suffered by Ms. Abuhadba. They were not indicative of significant loss. Based on this testimony, the jury was left to wonder why, if her injuries were serious, she did not pursue an equally serious course of medical treatment.

The jury's verdict in this case did not shock the conscience of the court. Both sides took significant risks in this trial and its outcome depended on who the jury chose to believe. Had the jury believed the Abuhadba evidence, Schena had exposure for a verdict in excess of a million dollars. If they did not find Ms. Abuhadba and/or her expert credible, the opposite result was possible, and this is what came to pass. I did not sit as "a thirteenth juror" and that is not the standard I apply here. The testimony presented by Ms. Abuhadba, her medical expert[3] and the defense expert were not so certain as to the extent of her injuries as to require a finding that she was denied justice. Much of the evidence of pain Ms. Abuhadba cites as verified by Dr. Berger's examination was based upon her subjective complaints. The evidence of injury shown in the MRIs[4] was explained by Dr. Berger as not having been caused by the collision. Insofar as her subjective complaints were concerned, Ms. Abuhadba's claims of pain were subject to credibility findings of the jury.

I feel it is appropriate in this case to respect "[t]he power of the jury as the ultimate finder of fact and the need for the judiciary to guard against usurping the role of the jury." *Davis*, 773 A.2d at 768. Here, "[t]he jury was not required to award plaintiff any amount as it obviously believed that any injury plaintiff suffered in the accident was insignificant." *Holland v. Zelnick*, 478 A.2d 885 (Pa.

---

3. As stated in footnote 1, review of the record indicates that the testimony of Ms. Abuhadba's medical expert, Kenneth Gentilezza, M.D., was not marked and admitted into evidence. See plaintiff's list of exhibits, NT, Volume II, 2; see also NT, Volume II, 5-6 (plaintiff's counsel stating that deposition transcript had not been marked).

4. For a discussion of the MRIs that were presented, see note 2.

Super. 1984).

Both the Pennsylvania Supreme Court and the Pennsylvania Superior Court have addressed the issue of whether the jury may return a verdict for the defendant, where the defendant's medical expert concedes that the plaintiff sustained some injury as a result of the collision. *Majczyk v. Oesch*, 789 A.2d 717, 722 (Pa. Super. 2001) (citations omitted). Case law has established that "where a defendant concedes liability and his...expert concedes injury resulting from the accident that would reasonably be expected to cause compensable pain and suffering, the jury's verdict is against the weight of the evidence where it finds for the defendant." *Id.* at 722. Whether or not compensable pain exists "is an issue of credibility and juries must believe that plaintiffs suffered pain before they compensate for that pain." *Id.* at 723 (citing *Davis v. Mullen*, 773 A.2d 764, 769 (Pa. 2001)).

Here, whether the jury's verdict was against the weight of the evidence turns on whether or not Ms. Abuhadba experienced compensable pain and suffering. There were inconsistencies in Ms. Abuhadba's testimony and large gaps in her treatment. The two medical experts disagreed about the nature and severity of her injuries. Dr. Berger believed her back pain was degenerative. He found only a limited loss of range of motion in her neck. The testimony at trial does not compel a rejection of the jury's verdict.

## ORDER

And now, December 3, 2010, following consideration of plaintiff's post-trial motion and on remand from the

Pennsylvania Superior Court, it is ordered that judgment is entered on the jury's December 3, 2009 verdict for defendant, Louis Schena and against the plaintiff, Rana Abuhadba. The prothonotary shall enter the judgment on the docket, together with the required notation that notice was given to the parties pursuant to Pa. R.C.P. 236(b).