J-S16020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARGARET ANTHONY AND CARMEN ANTHONY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1067 MDA 2017 |
| SAM RIZZO AND LISA ZAVADA RIZZO | : | |

Appeal from the Judgment Entered August 16, 2017
In the Court of Common Pleas of Luzerne County Civil Division
at No(s): 12175-CV-2015

BEFORE:   BOWES, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 03, 2018**

Margaret Anthony and Carmen Anthony (Appellants) appeal from the judgment entered after a jury awarded them $0 damages in this negligence action.[1]  Upon careful review, we affirm.

This case arises from an alleged dog bite attributed to a standard poodle owned by Sam Rizzo and Lisa Zavada Rizzo (the Rizzos).  Margaret Anthony was employed by the Rizzos as a house cleaner, and on May 23, 2014, Appellants arrived together at the Rizzos' home.  Lisa Rizzo was in her car and

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Appellants purported to appeal from the June 6, 2017 order denying their motion for post-trial relief.  That order is interlocutory, as an appeal properly lies from the entry of judgment, not from the denial of post-trial motions. ***See*** Pa.R.A.P. 301(a)(1), (c), (d); ***Prime Medica Assoc. v. Valley Forge Ins. Co.***, 970 A.2d 1149, 1154 n.6 (Pa. Super. 2009).  Judgment was properly entered on August 16, 2017, and we have amended the caption accordingly.

the dog was unrestrained in the rear seat with the windows open. Lisa greeted Margaret as Lisa backed out of the driveway, and Margaret approached the car. The dog barked from the rear driver's side as Margaret approached; the dog then came into contact with Margaret's right forearm.

That same day, Margaret treated with family physician Dr. Alan L. Boonin for what she described as a dog bite. Dr. Boonin diagnosed Margaret with an avulsion, or tearing of the skin, on her right forearm, and he cleaned the area, applied steri-strips, prescribed antibiotics and administered a tetanus booster shot. N.T., 4/18/17, at 71-73. Margaret had a follow-up visit with Dr. Boonin approximately one month later, on June 15, 2014, when Dr. Boonin observed that Margaret appeared to be healing. He did not refer Margaret to a plastic surgeon to discuss scarring-related issues.

Appellants initiated a lawsuit on October 29, 2015, raising a claim of negligence against the Rizzos.[2] They alleged, *inter alia*, that Margaret suffered injuries as a result of the bite from the Rizzos' dog. On April 4, 2017, Appellants filed a motion to preclude a verdict slip question and jury instruction on factual cause, which the trial court denied.

Trial commenced on April 18, 2017. Margaret testified that the dog lunged out of the car window and bit her twice on the forearm, causing her to bleed and sustain scarring. Margaret testified that she suffered from mental

---

[2] Appellants' complaint also included counts of negligence *per se,* premises liability, punitive damages, and loss of consortium for Carmen Anthony. Only the issue of negligence was presented to the jury and included in the verdict slip.

anguish and embarrassment as a result of the incident. Margaret's sister, Marlene Snedeker, testified that Margaret became fearful following the incident and she no longer enjoyed walks through their neighborhood. Appellants also called Dr. Boonin as a fact witness regarding his personal observations and medical records for Margaret.

Appellants additionally called Lisa Rizzo to testify as if on cross-examination. Lisa testified that Margaret rested her arm on the window while the dog was barking, and that Margaret's injury was nothing more than a minor scratch with only minimal bleeding. N.T., 4/18/17, at 57-59. She stated that she offered to wipe the affected area with a tissue, but Margaret said she planned to clean it with alcohol inside Lisa's home. *Id.* at 57-58.

Lisa testified again during the Rizzos' case in chief, and provided the same account of the incident. Neither party introduced any expert testimony.

In its jury instructions, the trial court instructed on factual causation as follows, in relevant part:

> In order for the [Appellants] to recover in this case, the [Rizzos'] negligent conduct must have been a factual cause in bringing about the harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual real factor in causing the harm, even if the result is unusual or unexpected.
>
> A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm. To be a factual cause, the [Rizzos'] conduct need not be the only factual cause. The fact that some other causes — the fact that some other causes concur with the [Rizzos'] negligence in producing an injury does not relieve the [Rizzos] from liability, as long as their own negligence is a factual cause of the injury.

- 3 -

N.T., 4/19/17, at 181-82.

As reflected on the verdict slip, the jury found that the Rizzos were negligent and that their negligence was a factual cause of any harm to Margaret. However, the jury further found that 50% of the causal negligence was attributable to Margaret and 50% was attributable to the Rizzos, and that the total amount of damages sustained by Margaret as a result of the incident was $0.

Appellants filed a timely motion for post-trial relief on April 28, 2017 seeking, *inter alia*, a new trial on the issue of damages. The Rizzos filed an answer. The trial court entered an order dated June 6, 2017 denying Appellants' post-trial motion. Appellants filed a notice of appeal, and subsequently complied with the court's Pa.R.A.P. 1925 order to file a concise statement of errors complained of on appeal. On August 15, 2017, this Court issued an order directing Appellants to praecipe for judgment in accordance with the trial court's June 6, 2017 order, and final judgment was entered on the trial court docket on August 16, 2017. The trial court subsequently issued a Pa.R.A.P. 1925(a) opinion.

Appellant raises the following issues for our review:

A. Whether the trial court abused its discretion and/or committed an error of law in denying [Appellants'] motion to preclude a verdict slip question and jury instruction on factual cause when it was uncontroverted that [Margaret] has suffered some injury as a result of the subject incident.

B. Whether the trial court abused its discretion and/or

- 4 -

committed an error of law in denying [Appellants'] motion for post-trial relief seeking a new trial on damages since the jury's verdict was so contrary to the evidence that it shocks one's sense of justice.

Appellants' Brief at 4 (unnecessary capitalization and suggested answers omitted).

In their first issue, Appellants argue that the trial court erred in charging the jury with an instruction on factual cause when it was undisputed that Margaret suffered some injury as a result of the incident. Appellants contend that the instruction and verdict slip "did nothing more than confuse the jury and result[ ] in a jury verdict that is against the weight of the evidence." *Id.* at 10.

We recognize:

Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, "[a] jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations."

The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

*Krepps v. Snyder*, 112 A.3d 1246, 1256 (Pa. Super. 2015) (citations and

- 5 -

some quotation marks omitted), *appeal denied*, 125 A.3d 778 (Pa. 2015). Further, "[w]hile we recognize that the [Pennsylvania Standard Jury Instructions] are not binding on trial courts, [they] are nonetheless instructive." *Gorman v. Costello*, 929 A.2d 1208, 1213 (Pa. Super. 2007).

Here, our review reveals that the trial court's jury instruction on factual cause was nearly identical to Pennsylvania Standard Jury Instruction 13.20 (Civ. 2017). The trial court rejected Appellants' argument that an instruction on factual causation misled or confused the jury, stating:

> Appellants argued that, if the jury found [the Rizzos] negligent, it must find that such negligence was the factual cause of Margaret[]'s injury. Indeed, following deliberations, the jury concluded that [the Rizzos'] negligence was a factual cause of Margaret[]'s injury. Any alleged legal error or unjust result that Appellants wanted to avoid . . . never came to fruition because the jury held that [the Rizzos'] conduct was a factual cause of any injury.

Trial Court Opinion, 10/24/17, at 11-12.

Upon review of the charge as a whole, we conclude that the trial court provided an adequate instruction for factual cause to sufficiently guide the jury in its deliberations. *See Krepps*, 112 A.3d at 1256. Even if an error occurred, we would agree with the trial court's conclusion that such error would be harmless because the jury found that the Rizzos' negligence was a factual cause of the harm to Margaret. *See Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 149-50 (Pa. Super. 2012) (post-trial request for new trial requires a showing of actual prejudice resulting from an erroneous ruling, and this Court "will not reverse an order denying a new

trial unless the trial court committed an error of law that controlled the outcome of the case"). Accordingly, Appellants' first argument is without merit.

Next, Appellants argue that the jury's verdict was against the weight of the evidence. Specifically, they contend that the jury was required to award damages upon finding the Rizzos negligent and their negligence a factual cause of Margaret's harm. Appellants argue that Margaret's injuries, including obvious and apparent scarring, are compensable and "more severe than a muscle strain/sprain that resolves within a short period of time." Appellants' Brief at 19. In support, Appellants rely in part on this Court's decision in **Caselli v. Powlen**, 937 A.2d 1137 (Pa. Super. 2007), for the propositions that a "jury is not free to ignore an obvious injury," and that an award of $0 "represents a finding by the jury that . . . [Margaret] experienced absolutely no compensable pain. . . ." Appellant's Brief at 18, *quoting* **Caselli**, 937 A.2d at 1139, 1140.

In considering whether the jury's verdict was against the weight of the evidence, we are mindful that:

> A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the [jury], and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion. Our standard of review in denying a motion for a new trial is to decide whether the

- 7 -

trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion.

*Elliott v. Ionta*, 869 A.2d 502, 504 (Pa. Super. 2005) (internal citations omitted).

In the *Casselli* decision cited by Appellants, a pedestrian initiated a negligence action after he fell on the sidewalk outside of a property owner's residence and incurred $1,578 in medical expenses. *Casselli*, 937 A.2d at 1138. The pedestrian suffered a broken bone in his foot, and the property owner did not dispute that the injury was caused by the fall or that the pedestrian's medical treatment was reasonable. *Id.* at 1140. The jury found that the pedestrian and property owner were each 50% negligent in causing the fall, but nevertheless awarded $0 in damages. *Id.* at 1138. On appeal, this Court noted: "[W]here a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause **compensable** pain and suffering, the jury's verdict is against the weight of the evidence where it finds for the defendant." *Id.* (emphasis removed, other emphasis added) (citation omitted). We then held that the jury's $0 verdict was against the weight of the evidence where causation was conceded, a broken bone is a type of injury "to which human experience teaches there is accompanying pain," and the property owner agreed that the pedestrian's medical treatment was reasonable. *Id.* at 1139 (citation omitted).

After thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude

that Appellants' challenge to the weight of the verdict does not merit relief.

Appellants did not offer any expert testimony in support of their claim of compensable pain, relying exclusively on fact witnesses. The trial court opinion thoroughly addresses and refutes Appellants' contentions. **See** Trial Court Opinion, 10/24/17, at 12-25 (stating that contrary to Appellants' argument, "[a] jury is not compelled to believe that a dog bite . . . causes compensable pain," **Boggavarapu v. Ponist**, 542 A.2d 516, 518 (Pa. 1988), and "the existence of compensable pain is an issue of credibility and juries must believe that plaintiffs suffered pain before they compensate for that pain," **Majczyk v. Oesch**, 789 A.2d 717 (Pa. Super. 2001); and noting that Appellants presented no expert medical testimony about any pain suffered by Margaret, the Rizzos testified that Margaret suffered a mere scratch that was a minor injury, and the jury was free to believe all, part, or none of the evidence, **see id.** at 725-26).

We further hold that **Casselli** is distinguishable — in that case, the broken bone suffered by the pedestrian was specifically noted as an injury recognized by common experience as a source of pain and suffering – whereas in the instant matter, Margaret's dog bite or scratch could be found, as a matter of law, to carry no compensable pain. **See Boggavarapu**, 542 A.2d at 518. Because the Honorable Lesa S. Gelb, sitting as the trial court, has authored an excellent analysis of Appellants' second issue, we adopt the opinion as our own. The parties shall attach a copy of the trial court's opinion

dated October 24, 2017, to all future filings in this matter that cite this memorandum.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2018

Margaret Anthony and : In the Court of Common Pleas
Carmen Anthony, : of Luzerne County

Appellants :

: CIVIL ACTION - LAW

vs. :
Sam Rizzo and :
Lisa Zavada Rizzo, :

Appellees : No. 12175 of 2015

FILED PROTHONOTARY LUZERNE COUNTY 2017 OCT 24 PM 2: 36

**OPINION**

## Background

Appellants initiated suit against Appellees by filing a Complaint on October 29, 2015, alleging that Appellant Margaret Anthony ("Margaret Anthony") suffered injuries as a result of a bite from Appellees' dog on May 23, 2014.[1] In advance of trial, on April 4, 2017, Appellants filed a Motion to Preclude a Verdict Slip Question and Jury Instruction on Factual Cause, arguing that the uncontested medical evidence reflected that Margaret Anthony suffered injury, and, is therefore, legally entitled to relief. (4/4/17 Motion to Preclude Factual Cause.) On April 11, 2017, Appellees filed an Answer to Appellants'

---

[1] Appellant Carmen Anthony, Margaret Anthony's husband, alleged injuries due to loss of consortium. (Complaint, ¶56-59.) During the trial, Appellants presented no evidence regarding Appellant Carmen Anthony's loss of consortium claim. Accordingly, the issue of loss of consortium was not included in the verdict slip or otherwise presented to the jury.

Motion to Preclude Factual Cause Instruction and Verdict Slip Entry. (4/11/17 Answer Preclude Factual Cause.) In their Answer, Appellees argued that, where causation is disputed, the burden of proof for factual cause lies with the plaintiff. See (id.) Further, Appellees asserted that they continue to dispute causation and that the jury would be free to reject any of Appellants' evidence presented in support of causation. See (id.)

On April 18, 2017, a trial commenced in the above-captioned matter (the "Trial"). At the start of the Trial, this Court deferred ruling on Appellants' Motion to Preclude Factual Cause Instruction and Verdict Slip Entry until after any relevant evidence was presented to the jury (N.T.,[2] p. 4-5.) Following opening statements by the parties, Appellants' counsel called Appellee Lisa Zavada Rizzo ("Lisa Rizzo") as a witness to be questioned as though under cross examination. (N.T., p. 41.)

According to Lisa Rizzo, her dog that was involved in the incident on May 23, 2014 was a standard poodle that weighed approximately sixty-five (65) to seventy (70) pounds. (N.T., p. 44-45.) On the day of the

---

[2] N.T. refers to the Notes of Testimony from the Trial commencing on April 18, 2017.

2

incident, Appellees' dog was in the back of Lisa Rizzo's vehicle with the windows down to allow the entire vehicle to cool down while the air conditioning started. (N.T., p. 55.) While Lisa Rizzo waited in the driveway, Appellants arrived to clean her home. (N.T., p. 55-56.) After Lisa Rizzo attempted to greet Margaret Anthony from her vehicle, Anthony approached because she was unable to hear what Rizzo said. (N.T., p. 56-57.) As Margaret Anthony reached Lisa Rizzo's car, the dog was barking from the rear driver's side. (N.T., p. 59, 66.)

Soon after arriving at the vehicle, Margaret Anthony came into contact with Appellees' dog as she rested her forearm on the open car window ledge. (N.T., p. 57.) During her testimony, Lisa Rizzo maintained that her dog merely scratched Margaret Anthony and that she was able to aid Anthony by wiping the area with a tissue moistened with saliva. (N.T., p. 57.) At the time of the incident, Lisa Rizzo noticed that Margaret Anthony's arm was bleeding a little, but Anthony indicated that she planned to clean the area with alcohol once inside Appellees' home. (N.T., p. 58.) Later, Lisa Rizzo called Margaret Anthony to inform her that the dog's shots were up to date, but that she should visit her doctor if she so desired. (N.T., p. 58.)

3

Dr. Boonin, Margaret Anthony's family physician, treated her on the date of the incident for an injury to her forearm that she described as a dog bite. (N.T., p. 70.)Dr. Boonin's records from that day indicate that his diagnosis was a "...right forearm evulsion of the skin and a one-inch hematoma with no bite marks." (N.T., p. 71.) An evulsion is a tearing away of the skin. (N.T., p. 72.) In Margaret Anthony's case, this meant that the top part of her right forearm skin was torn away from the lower fatty tissue layer. (N.T., p. 72.) Dr. Boonin also explained that, with a dog bite, the teeth could get under the skin and pull it over, leaving no actual bite marks. (N.T., p. 72.) To treat Margaret Anthony's arm, Dr. Boonin cleaned it, applied steri-strips, prescribed an antibiotic, and administered a tetanus booster shot. (N.T., p. 73.) According to Dr. Boonin, he prescribed an antibiotic because of the high rate of infection associated with animal bites, and administered the tetanus booster shot as he would in any case involving a bite or a tear of the skin from an object. (N.T., p. 73.) Dr. Boonin saw Margaret Anthony again on June 15, 2014 and noted that her forearm evulsion was healing. (N.T., p. 73.) Dr. Boonin never referred Margaret Anthony to a plastic surgeon for the injury. (N.T., p. 81.)

4

According to Margaret Anthony, on the day in question, she approached Lisa Rizzo's vehicle even though the dog was barking because the dog often barked at her. (N.T., p. 89.) Margaret Anthony denied leaning on the window ledge, as Lisa Rizzo described, and, explained that the dog lunged out of the rear window to bite her twice on the arm. (N.T., p. 89.) After noticing blood running down her arm, Margaret Anthony went into the house to clean the wound with peroxide. (N.T., p. 89.) She then proceeded to Dr. Boonin's office for an emergency appointment, instead of going to an emergency room. (N.T., p. 89.) After the visit to Dr. Boonin's office, she was taking Aleve for the pain at the wound site. (N.T., p. 100.)

During Margaret Anthony's testimony, Appellants' counsel published to the jury a photograph of her arm that was taken a few months after the incident (N.T., p. 92-93.) Margaret Anthony also showed the jury her arm from the witness stand. (N.T., p. 94.) She testified that, since the day of the incident, she often covers the injured area on her arm as she is sometimes teased about the scar. (N.T., p. 91-92.) Also, Margaret Anthony explained that she no longer takes walks because she is afraid of dogs and still has nightmares

5

about the incident. (N.T., p. 95-97.) Margaret Anthony never treated with a doctor for these nightmares. (N.T., p. 113.) Following the incident, Margaret Anthony never returned to work for Appellants; however, Dr. Boonin did not instruct Margaret Anthony that she could not work because of her injury. (N.T., p. 97, 113.)

Later, Margaret Anthony's sister, Marlene Snedeker, ("Snedeker") testified about the injury Anthony suffered and the effect the incident had on her. (N.T., p. 116-117.) Snedeker helped her sister clean the wound the day after the incident and noticed that she was in visible pain during this process. (N.T., p. 118-119.)Snedeker also explained that she and her sister used to enjoy four mile walks in both the morning and evening, but that stopped after the incident because of her sister's fear of dogs. (N.T., p. 117, 119-120.)

At the start of the defense's case in chief, Lisa Rizzo again testified. (N.T., p. 146-165.) During her testimony, Lisa Rizzo reviewed her prior depiction of the incident. (N.T., p. 146-165.) Appellant Sam Rizzo ("Sam Rizzo") also provided testimony about the day of the incident. (N.T., p. 165.)Sam Rizzo recalled his conversation with his wife, Lisa Rizzo, on the day of the incident. (N.T.,p. 170.) Sam Rizzo

remembered Lisa explaining that Margaret Anthony was claiming the Appellees' dog bit her and that she had a mark, like a scratch, on her arm. (N.T., p. 170.) Also, after Lisa Rizzo advised him that Margaret Anthony said she did not plan to sue Appellees, Sam Rizzo told his wife to begin documenting everything that occurred with Margaret Anthony because he feared an unfounded lawsuit. (N.T., p. 171.)

After the defense finished presenting its witnesses, this Court delivered its charge to the jury. (N.T., p. 176.) Relevant to the factual cause of any harm, this Court instructed the jury as follows:

> In order for [Margaret Anthony] to recover in this case, the [Appellees'] negligent conduct must have been a factual cause in bringing about the harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual real factor in causing the harm, even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm. To be a factual cause, the [Appellees'] conduct need not be the only factual cause. The fact that some other causes – the fact that some other causes concur with the [Appellees'] negligence in producing an injury does not relieve the [Appellees] from liability, as long as their own negligence is a factual cause of the injury. (N.T., p. 181-182.)

7

The jury rendered its verdict on April 19, 2017. Relevant to the current appeal, the jury completed the verdict slip as follows:

1. Do you find that [Appellees], Sam Rizzo and Lisa Zavada Rizzo were negligent? <u>Yes</u>

2. Was the [Appellees'] negligence a factual cause of any harm to [Appellant Margaret Anthony]? <u>Yes</u> ...

5. Taking the combined negligence that was a factual cause of any harm to [Margaret Anthony] as 100 percent, what percentage of that causal negligence was attributable to the [Appellees] and what percentage was attributable to [Margaret Anthony]?

| [Appellees] | <u>50%</u> |
| [Margaret Anthony] | <u>50%</u> |

6. Please state the total amount of damages, if any, sustained by [Margaret Anthony] as a result of this accident, without regard to and without reduction by the percentage, if any, that you have attributed to [Margaret Anthony].

Total <u>$0</u>

8

On April 28, 2017, Appellants filed a Motion for Post-Trial Relief. (4/28/17 Post-Trial Motion.) In Appellants' Brief in Support of Post-Trial Motion, Appellants argued that the trial court erred by including the issue of factual cause in its charge and on the verdict slip, and, that the jury was required to find some amount of damages in favor of Appellant Margaret Anthony. (4/28/17 Post-Trial Brief.) On May 5, 2017, Appellees filed their Answer to Appellants' Motion for Post Trial Relief. By Order dated June 6, 2017, this Court denied Appellants' Motion for Post Trial Relief. (6/6/17 Order.) Appellants filed a Notice of Appeal to the Pennsylvania Superior Court on July 5, 2017.

On July 27, 2017, Appellants filed their Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. No. 1925. In their Concise Statement, Appellants raise the following issues for review:

1. Whether it was an error in charging the jury on Factual Cause and/or placing the question of factual cause on the verdict slip when the evidence presented made it clear that [Margaret Anthony's] injuries where clear and obvious and as a result of the May 23, 2014 incident.

9

2. Whether it was an error to deny [Appellants] a new trial on damages where the jury has already found the [Appellees] were negligent, and such negligence was the factual cause of [Appellants'] damages.

## Standard of Review

"A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. It is beyond argument that the fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence." Casselli v. Powlen, 937 A.2d 1137, 1139 (Pa. Super. 2007)(quoting Nemirovsky v. Nemirovsky, 776 A.2d 988 (Pa. Super. 2001)).

In addition, the Pennsylvania Supreme Court has instructed as follows:

> We have held that it is the duty of the trial court 'to control the amount of the verdict; it is in possession of all the facts as well as the atmosphere of the case, which will enable it to do more evenhanded justice between the parties than can an appellate court.' Thus, 'a jury verdict is set aside for inadequacy when it

10

appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff.' Hence, a 'reversal on grounds of inadequacy of the verdict is appropriate only where 'the injustice of the verdict stands forth like a beacon.'' Davis v. Mullen, 565 Pa. 386, 390-91, 773 A.2d 764, 766 (Pa. 2001)(internal citations omitted).

## Discussion

First, Appellants argue that the trial court erred by including the issue of factual cause in its instruction and on the verdict slip; however, Appellants' argument ignores the fact that the jury explicitly found that Appellees' conduct was a factual cause of Margaret Anthony's harm. See (Verdict Slip.) In their Motion to Preclude a Verdict Slip Question and Jury Instruction on Factual Cause, Appellants argued that, because the evidence was undisputed that Margaret Anthony suffered an injury, the jury must find factual cause and could not avoid awarding damages by finding otherwise. (4/4/17 Motion to Preclude Factual Cause.) Without even touching upon the merits of this argument, the end result which Appellants sought was reached not by a judicial ruling, but by the findings of the jury. Appellants argued

11

that, if the jury found Appellees negligent, it must find that such negligence was the factual cause of Margaret Anthony's injury. Indeed, following deliberations, the jury concluded that Appellees' negligence was a factual cause of Margaret Anthony's injury. Any alleged legal error or unjust result that Appellants wanted to avoid by this Court granting their Motion never came to fruition because the jury held that Appellees' conduct was a factual cause of any injury.

In their second issue presented for review, Appellants allege that the trial court erred by denying their request for a new trial on damages because it was against the weight of the evidence for the jury to fail to award any damages. Appellants assert that, having found Appellees negligent and that such negligence was a factual cause of Margaret Anthony's harm, the jury was not free to ignore her obvious injury and fail to award damages. Contrary to Appellants' argument, the Pennsylvania Supreme Court has stated, "[a] jury is not compelled to believe that a dog bite or puncture by needle causes compensable pain." Boggavarapu v. Ponist, 518 Pa. 162, 167, 542 A.2d 516, 518 (Pa. 1988).

12

"Indeed, the existence of compensable pain is an issue of credibility and juries must believe that plaintiffs suffered pain before they compensate for that pain." Majczyk v. Oesch, 789 A.2d 717, 723 (Pa. Super. 2001)(quoting Davis v. Mullen, 565 Pa. 386, 396, 773 A.2d 764, 769 (Pa. Super. 2001)). Further, "...the determination of what is compensable injury is uniquely within the purview of the jury." Id. at 726.

In Majczyk v. Oesch, the Pennsylvania Superior Court affirmed the trial court's denial of a motion for new trial, holding that a jury may find for a defendant in the face of obvious negligence where it does not believe that a plaintiff's alleged pain and suffering was compensable. Id. Majczyk involved a personal injury claim filed by the plaintiffs after their vehicle was rear-ended by the defendant who was traveling at a speed of five (5) mph. Id. at 719. Specifically, the plaintiff driver alleged a herniated cervical disc as a result of the accident and sought damages for her ongoing pain and suffering. Id. at 719-721. During the trial, two of the defendant's medical experts testified regarding the plaintiff driver's alleged injuries. Id. at 721. The defendant's first medical expert testified that the plaintiff driver

13

suffered a cervical strain in the accident and that he advised her to keep wearing the medical collar prescribed at the emergency room. Id. Upon review of this testimony, the Superior Court further noted that the first medical expert testified that the plaintiff driver was "100 percent better" approximately three weeks after the accident. Id. The defense's second medical expert, while disputing causation of the plaintiff driver's more serious injury, still appeared to admit that the plaintiff driver suffered some injury. Id. at 721-722. The jury held in favor of the defendant and the trial court denied the plaintiff driver's motion for new trial. Id. at 720.

Based on her characterization of the defendant's medical testimony as having conceded injury, the plaintiff driver appealed the defense verdict to the Pennsylvania Superior Court, arguing, in part, that the jury verdict was against the weight of the evidence presented at trial. Id. at 720. In its opinion, the Superior Court summarized the general rule of the cases relied upon by the plaintiff driver as follows: "...where a defendant concedes liability and his or her expert concedes injury resulting from the accident that would reasonably be expected to cause **compensable** pain and suffering, the jury's verdict

14

is against the weight of the evidence where it finds for defendant." Id. at 722. The Majczyk Court then explored the meaning of **compensable** pain and suffering by detailing the Pennsylvania Supreme Court's analysis of two seemingly conflicting lines of cases in Davis v. Mullen. Id. at 722-723. Relying on Davis and other related cases, the Majczyk Court found that, although the trial included disputed evidence regarding the severity of the injuries, the jury was free to believe all, part, some, or none of that evidence. Id. at 726. Affirming the trial court's denial of a new trial, the Superior Court determined that "...while the jury may have concluded that [the plaintiff driver] suffered some painful inconvenience for a few days or weeks after the accident, it may also have concluded that [the plaintiff driver's] discomfort was the sort of transient rub of life for which compensation is not warranted." Id. at 726 (citing Boggavarapu v. Ponist, 518 Pa. 162, 167, 542 A.2d 516, 518 (Pa. 1988)).

In Davis, as relied upon by the Majczyk Court, the Pennsylvania Supreme Court resolved two apparently competing lines of cases regarding compensable injury by distinguishing the severity of the

15

plaintiffs' injuries in each line of cases.[3] Davis v. Mullen, 565 Pa. 386, 773 A.2d 764 (Pa. 2001); See also Majczyk, 789 A.2d at 722-723. The plaintiff in Davis, a driver of a tractor trailer, filed suit against the driver of a vehicle who fell asleep at the wheel and crossed the dividing line to strike the plaintiff's truck head-on. Davis v. Mullen, 565 Pa. 386, 389, 773 A.2d 764, 765. During the trial, the plaintiff testified that he was examined at the hospital and received pain medication, but, that he returned to work the Monday after the accident, which occurred on Friday. Id. About twenty days after the accident, the plaintiff sought treatment from a chiropractor, but discontinued the sessions after twenty visits. Id. The only issue for the Davis jury was damages, as the defendant admitted liability, but disputed the extent of the plaintiff's injury. Id. The jury awarded the plaintiff compensation for his medical

---

[3] As noted by the Majczyk Court, the Davis Court examined compensable injury in a slightly different context. Majczyk, 789 A.2d at 722. In Davis, the Supreme Court addressed a situation where a jury awarded the plaintiff compensation for medical expenses, but failed to award any damages for pain and suffering. Davis v. Mullen, 565 Pa. 386, 773 A.2d 764. The Court's decision to uphold the jury award was based upon its analysis of what constitutes a compensable injury. Id. Although the instant matter does not involve the exact situation where medical expenses were awarded in the absence of compensation for pain and suffering, the Davis Court's holding regarding compensable injury is relevant to a determination in this matter where the jury found negligence was split 50/50 between the parties, but did not award damages for pain and suffering. Like in Majczyk, the jury in this case found in favor of the defendants, awarding no damages to Margaret Anthony for her alleged pain and suffering, thereby, demonstrating their belief that any injuries suffered were not compensable. Because the Pennsylvania Superior Court in Majczyk applied the Davis analysis of compensable injury to a similar situation where no damages were awarded, it is directly applicable to the current matter. See Majczyk, 789 A.2d 717.

16

expenses and damaged personal property; however, they awarded no money for pain and suffering. Id. at 390, 766. Following the jury verdict, the trial court denied the plaintiff's motion for new trial related to the lack of award of damages for pain and suffering. Id. On appeal, the Pennsylvania Superior Court reversed the trial court, finding that the award was inconsistent with the evidence of record. Id.

At the start of its Opinion affirming the trial court, the Davis Court acknowledged that it must reconcile a line of cases where new trials were granted for a jury's failure to award damages for pain and suffering in addition to medical expenses with a line of cases upholding jury verdicts that awarded compensation for medical expenses in the absence of any award for pain and suffering. Id. at 391, 766. First, the Davis Court described in detail the line of cases that were overturned for failure to award damages for pain and suffering. Id. at 391-392, 767. This first line of cases involved evidence of severe injury with no compensation for pain and suffering. See id. at 392-393, 767-768. For example, the Davis Court reviewed cases involving injuries to plaintiffs which included a woman suffering from a neck protrusion that rendered her 30-40% disabled as a result of the vehicle in which

17

she was riding colliding with a utility poll; a woman who was rendered unconscious and suffered a disfiguring scar from a car accident; and, a woman who was hospitalized for 19 days and unable to work for 14 months as the result of a motor vehicle accident. Id. at 391-393, 767-768. The Davis Court explained the Pennsylvania Supreme Court's decision to overturn such jury verdicts in this first line of cases as follows: "...the plaintiffs' injuries were too severe for the trial courts to have had a reasonable basis to believe that the juries' awards of medical expenses, without compensation for pain and suffering was based on any determination properly in province of the juries." Id. at 391-392, 767.

Next, the Davis Court considered the second line of cases where the Pennsylvania Supreme Court "...focused on the power of the jury as the ultimate finder of fact and the need for the judiciary to guard against usurping the role of the jury," concluding that "...a jury award of medical expenses without a corresponding award of damages for pain and suffering, is not necessarily inconsistent." Id. at 393, 768. This second line of cases involved the following circumstances: a plaintiff who received a Band-Aid and two tetanus shots to treat a dog bite

18

wound while later complaining of sciatic nerve pain from the needle, and a plaintiff who was the victim of the use of excessive force by a police officer. Id. at 394-995, 768-769. Having reconciled these two lines of cases based on the severity of the injury and the jury's province to determine whether an injury is compensable, the Davis Court rejected any per se rule preventing a jury from compensating a plaintiff for medical expenses in the absence of an award of damages for pain and suffering. The Court explained, "[i]ndeed, the existence of compensable pain is an issue of credibility and juries must believe that plaintiffs suffered pain before they compensate for that pain." Id. at 396, 769 (internal citations omitted).

Notably, one case examined by the Davis Court in its second line of cases involved circumstances similar to the instant matter. In Boggavarapu v. Ponist, the Pennsylvania Supreme Court held that the record was sufficient to support the jury's finding that the plaintiff did not suffer compensable pain from a dog bite. Boggavarapu v. Ponist, 518 Pa. 162, 542 A.2d 516 (Pa. 1988). The plaintiff in Boggavarapu brought suit against his neighbor for a dog bite which resulted in two puncture wounds. Id. at 165, 517. To treat the dog bite, the plaintiff

19

went to a local emergency room where he received two tetanus shots and a Band-Aid. Id. The plaintiff later alleged that the tetanus needle pierced his sciatic nerve, causing continuing pain. Id. After finding the defendants negligent, the jury awarded the plaintiff damages for his medical expenses only, not for pain and suffering. Id. at 166, 518. The trial court in Boggavarapu granted the plaintiff a new trial because the award did not include compensation for pain and suffering. Id. The Superior Court affirmed. Boggavarapu v. Ponist, 368 Pa. Super. 634, 531 A.2d 28 (Pa. Super. 1987).

The Pennsylvania Supreme Court reversed the Superior Court, finding that, upon the evidence presented, the jury was free to believe all, some, or none of the allegations related to the plaintiff's pain and suffering. Boggavarapu, 518 Pa. 162, 168-169, 542 A.2d 516, 519. Although the Court acknowledged that there are certain injuries which common experience tells us cause pain, it explained that, "[a] jury is not compelled to believe that a dog bite or puncture by a needle causes compensable pain." Id. at 167, 518. Further, "[t]hey may believe that it is a transient rub of life and living, a momentary stab of fear and pain, or neither." Id. Specifically, the Boggavarapu

20

Court clarified that the jury's award was related to the dog bite only, not the needle. Id. at 168, 518. Because the plaintiff's allegations of pain were related to the needle, rather than the bite, the jury was free to hold that the dog bite was not a compensable injury. Id. at 168, 518-519. While the jury was also free to find that pain accompanied the dog bite, it was not required to do so and was able to reject any subjective notions of pain. Id.

Like Boggavarapu, the facts of the case currently before this Court fit squarely within the Davis second line of cases where the jury's decision not to award compensation for pain and suffering must be upheld. See Davis v. Mullen, 565 Pa. 386, 393, 773 A.2d 764, 768 (Pa. 2001). Although the jury found Appellees negligent and that their negligence was a factual cause of the injury to Margaret Anthony, they were free to find, based on the record, that the injury was not compensable. The main factors which demonstrate that the zero dollar award in the instant matter was wholly within the province of the jury are that both injury and causation were disputed throughout the trial, the allegations regarding pain and suffering were subjective, and the injury itself was minor. First, while Pennsylvania Courts have

21

previously held that, where liability and injury likely to cause *compensable* pain are conceded, it is against the weight of the evidence to find for the defendant, in the current matter, neither liability, nor injury associated with compensable pain were conceded. See Majczyk v. Oesch, 789 A.2d 717, 720 (Pa. Super. 2001). Throughout the Trial, Appellees asserted that Margaret Anthony suffered a mere scratch which was due to her own negligence in approaching the vehicle and that the scratch was only a minor injury. See (4/11/17 Answer Preclude Factual Cause; N.T., p. 57-59, 66, 71-73, 97, 100, 113.) In fact, Appellees even suggested that Appellants' claim was fabricated or exaggerated. See (N.T., p. 171.) This is simply not a situation where Appellees accepted any sort of liability for a compensable injury that would render the jury's verdict against the weight of the evidence.

Second, there was no expert medical testimony in this case about any pain suffered by Margaret Anthony.[4] Indeed, all of the

---

[4] Dr. Boonin's testimony at trial was solely as Margaret Anthony's treating physician and not as an expert rendering any opinions relevant to this case. Dr. Boonin did not prepare an expert report, was never admitted as an expert, and was testifying under subpoena. See (N.T., p. 69-84.) Furthermore, Dr. Boonin provided no testimony related to Margaret Anthony's pain and suffering. See (id.)

22

evidence regarding suffering by Margaret Anthony came from her own testimony and that of her sister. It is black letter law that a jury is free to believe all, part, some, or none of the evidence presented to it. Majczyk, 789 A.2d 717, 726. The jury's ultimate finding in favor of the defense indicates that it rejected this subjective testimony about Margaret Anthony's alleged pain. Margaret Anthony testified that, as a result of the dog bite, she had to go to an emergency visit with her doctor and took Aleve to subdue the pain she experienced. (N.T., p. 89, 100.) She also provided testimony regarding the effect the resulting scar has on her life. (N.T., p. 91-92, 95-97.) According to Margaret Anthony, she now experiences nightmares, covers the scar in embarrassment, and is unable to take walks outside because of other people with dogs. (N.T., p. 91-92, 95-97.) Margaret Anthony's sister added that she was in visible pain while cleaning the wound the day after the incident. (N.T., p. 118-119.)

Although the jury was free to reject this evidence outright with nothing to dispute it, there was also contradictory evidence presented that the jury apparently found credible. Lisa Rizzo described the wound as a mere scratch that she was able to treat

23

Margaret Anthony during which he noted that the wound was healing. (N.T., p. 73.) Dr. Boonin never referred Margaret Anthony to a plastic surgeon, nor told her that she should stop working. (N.T., p. 97, 113.) In fact, the view of Margaret Anthony's scar at the Trial revealed only a faint, small marking, not unlike the kind of faint scars or blemishes most adults have on their bodies. (N.T., p. 94.) This case stands in strong contrast to the first line of cases identified in Davis and is most similar to the dog bite in Boggavarapu. See Davis, 565 Pa. 386, 391-392, 773 A.2d 764, 767; Boggavarapu v. Ponist, 518 Pa. 162, 542 A.2d 516 (Pa. 1988). Accordingly, the jury was free to hold that Margaret Anthony's injury was nothing more than a transient rub of life for which compensation was not warranted.

(END OF OPINION)