**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEMETRIUS FLAHN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KEVIN PARKS | : | No. 1144 EDA 2020 |

Appeal from the Judgment Entered February 24, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 180300083

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OLSON, J.:                          Filed: April 14, 2021

Appellant, Demetrius Flahn, appeals from the judgment entered on February 24, 2020, following a jury verdict returned in favor of Kevin Parks (Parks) and the denial of Appellant's post-trial motions.  We affirm.

The trial court summarized the facts of this case as follows:

Appellant was stopped at the light on westbound Lindbergh Boulevard, near Island Avenue, at April Walk, which enters the Penrose shopping center in Philadelphia.  Appellant waited at the intersection for the light to change.  When the green arrow for a left turn came on, Appellant proceeded to make the left turn.  As he travelled through the intersection, he was struck on the passenger side of his vehicle by an oncoming vehicle driven by Parks.

Parks testified that he saw the light was red at the intersection from about 300 feet away while travelling at about 25 miles per hour.  Parks started to brake as he approached the intersection, but let off the brake at the intersection when he says the light

_____

[*] Retired Senior Judge assigned to the Superior Court.

turned green. Parks vehicle struck Appellant's vehicle, causing an impact which moved Appellant's car some.

Appellant alleges the collision was hard enough to break the axle on the car he was driving. Photographs of the vehicle were introduced [into evidence].

Appellant testified that he felt pain in his hips as he exited the vehicle, causing him to drop to the "floor." Appellant testified that he was feeling lightheaded. An ambulance came and transported him to Presbyterian Hospital. The ambulance EMS officer recorded that Appellant was complaining of leg pain. At the hospital[,] Appellant described left hip pain and a headache. He reported to hospital staff that he struck his head when he fell after getting out of the car following the collision. The hospital examination revealed no neck pain, weakness or numbness, or back pain, with no other complaints. Appellant was discharged after [six or seven] hours.

On March 28, 2016, Appellant saw Dr. [Mark] Allen, of Allied Medical Associates. The examination indicated complaints of lower back pain and left hip pain. The examination revealed spine and left hip tenderness. The medical impression was "[p]ost traumatic strain/sprain of the lumbar spine, post traumatic left hip pain." [Dr. Allen, Appellant's proffered expert, prepared a written report which was introduced at trial, wherein, to a reasonable degree of medical certainty, Dr. Allen opined t]hose conditions were a direct result of the accident[.]

Appellant was prescribed therapy at that facility for almost seven months. Appellant was also given a back brace which he wore for two months after discharged from therapy. Appellant was out of work for about two weeks, after which he returned to work full time, on what he described as informal light duty. Appellant testified that he was able to resume his normal activity after eight months. Examination on April 19, 2016, was similar. Dr. Allen's discharge summary on October 13, 2016, described on-going lumbosacral pain, with an impression of chromic post[-]traumatic sprain of lumbar spine, disc bulge and bilateral lumbar radiculopathy.

Appellant was involved in a prior rear end collision in 2009, where he was treated for injury to his neck and back. Appellant was also involved in a rear[-]end hit[-]and[-]run collision on June 14, 2016, four months after the collision in this case.

Trial Court Opinion, 8/3/2020, at 1-3.

On March 5, 2018, Appellant filed a civil complaint against Parks, alleging Parks was negligent and that such negligence caused injuries to Appellant. The case proceeded to a two-day jury trial commencing on January 22, 2020. At trial:

> Parks' defense presented an expert report of radiologist Michael Brooks, which state[d]:
>
>> Review of the lumbar imaging study demonstrates no focal disc herniation, bulging or bony stenosis. There is disc degeneration at L-3/L-4 level consistent with a chronic degenerative process.
>>
>> No fracture is seen, no vertebral body collapse is seen. No bone displacement is seen. No bone destruction is seen. No bleeding or swelling is seen within the core or the surrounding soft tissue. No compression of] the spinal cord or nerve root is noted.
>>
>> It is, therefor (sic), my opinion, within a reasonable degree of medical certainty, after review of the lumbar imaging study as described above to state the following in relation to a traumatic event dated [March 11, 2016]:
>>
>>> One; chronic and longstanding preexisting degenerative changes are present at L-3/L-4, which is described in detail above.
>>>
>>> This finding is consistent with chronic degenerative process which would predate and be unassociated with the traumatic event in question.
>>>
>>> There are no findings in the lumbar imaging study which would be caused by the traumatic event in question or represent a super imposition of an acute process on chronic disc degeneration.
>>>
>>> There is no compression of the spinal cord or nerve roots seen in the examination. Therefor (sic), there are no abnormalities which would correspond to findings of myelopathy or radiculopathy.

- 3 -

> Dr. Daniel Goldstein, an orthopedic surgeon retained by the defense to conduct an [independent medical examination], reported:
>
> > The medical documentation does not support the causal relationship between the accident and the injury.
> >
> > [Appellant] stated he did have a car accident approximately four to five years prior. He stated he also had prior low back pain for which he did physical therapy for his low back.
> >
> > Currently he's not undergoing any current treatment and I would not recommend any further treatment related to this accident.
> >
> > If [Appellant] were to have complaints about the lumbosacral pain or lower extremity radiculopathy, I would attribute that to degenerative process and not acute or traumatic in nature.

*Id.* at 3-4 (record citations omitted).

At the conclusion of trial on January 23, 2020, the jury ultimately found Parks negligent, but determined that Parks' negligence was not a factual cause of Appellant's injuries. On January 29, 2020, Appellant filed a timely post-trial motion. Therein, Appellant requested that the trial court enter judgment notwithstanding the verdict (JNOV) in his favor and grant a new trial on damages. In the alternative, Appellant requested a new trial. The trial court denied relief by order entered on February 24, 2020. Appellant filed a praecipe to enter judgment and this timely followed.[1]

---

[1] On March 12, 2020, Appellant filed a notice of appeal. Upon review of the record, it does not appear that the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 3, 2020, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Appellant presents the following issue for our review:

Did the trial court err in denying Appellant's motion for post[-]trial relief where the jury verdict shocked the conscience by going against the clear weight of the evidence, when the jury was presented with evidence from [Park]'s own orthopedic expert that Appellant's injuries were causally related to the collision at issue and the jury found no causation?

Appellant's Brief at 4 (superfluous capitalization omitted).

In sum, Appellant argues:

Where there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused some injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least some of plaintiff's injuries. *Andrews* [*v. Jackson*], 800 A.2d [959 (Pa. Super. 2002).] Such a verdict is contrary to the weight of the evidence adduced at trial. In other words, "a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic." *Andrews*, 800 A.2d at 962.

In the instant trial[,] Appellant's doctor[, Dr. Allen, opined] that he sustained injury as a result of the motor vehicle collision. So did Dr. Goldstein, the doctor who performed the defense medical examination. The courts have recognized instances where both parties' medical experts agreed that Appellant suffered injury and that defendant's negligence was a substantial factor in causing the injury, but the injuries were not serious enough to award compensation. *See Majczyk v. Oesch*, 789 A.2d 717 (Pa. Super. 2001). However, when that type of situation arose, the proper [result] was to for the jury to find that the accident was a substantial cause of at least some injury, "where both parties medical experts agree the accident caused some injury. While the jury may then find the injuries caused by the accident were incidental or noncompensable and deny damages on that basis, the jury may not simply find the accident did not 'cause' an injury, where both parties' medical experts have testified to the contrary." *Andrews*, 800 A.2d at 964.

Appellant's Brief at 13-14. Citing our subsequent decisions following *Andrews*, specifically, *Smith v. Putter*, 832 A.2d 1094 (Pa. Super. 2003), *Kraner v. Kraner*, 841 A.2d 141 (Pa. Super. 2004), and *Bostanic v. Barker-Barto*, 936 A.2d 1084 (Pa. Super. 2007), Appellant argues the trial court "did not apply the correct standard as outlined in *Andrews* and its progeny, and instead, focused on other factors such as [] Appellant's other medical records and credibility, which are not factors in an *Andrews* analysis." *Id.* at 16. In support of his argument, Appellant relies heavily on the written report of defense expert, Dr. Goldstein, wherein Dr. Goldstein opined that Appellant's injuries were causally related to the accident.[2] Appellant notes, however, that when defense counsel read portions of Dr. Goldstein's report into the record at trial, counsel misread the report and incorrectly stated that Dr. Goldstein opined that Appellant's injuries were **not** causally related to the accident.[3] *Id.* at 8-9; 16 (emphasis supplied).

_____

[2] By stipulation, the parties agreed that counsel for each side would read their respective expert opinions into the record in *lieu* of calling expert witnesses for live testimony or introducing expert testimony through videotaped deposition.

[3] Appellant did not object to any alleged misrepresentation of Dr. Goldstein's expert report at trial. "Under prevailing Pennsylvania law, a timely objection is required to preserve an issue for appeal." *Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 45 (Pa. 2011) ("the object of contemporaneous objection requirements respecting trial-related issues is to allow the court to take corrective measures and thereby to avert the time and expense of appeals or new trials."). Moreover, Appellant did not raise this specific aspect of his current claim in his post-trial motion. If an issue is not raised in a post-trial motion, it is waived for purposes of appeal. *See* Pa.R.C.P.

We adhere to the following standard of review:

> [A]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> We stress that if there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party.

*Corvin v. Tihansky*, 184 A.3d 986, 992–993 (Pa. Super. 2018) (internal

citations omitted).

---

227.1(b)(2); *Agostinelli v. Edwards*, 98 A.3d 695, 705 (Pa. Super. 2014). Moreover, an appellant cannot raise an issue for the first time on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). In the absence of a contemporaneous objection, the record is devoid of factual development and counseled advocacy explaining how and why defense counsel's alleged misstatement occurred. Hence, Appellant's omission has impaired our ability to undertake meaningful appellate review of this claim. Therefore, because Appellant failed to properly preserve this aspect of his appeal, we find it waived. Regardless, as discussed at length below, Appellant's reliance on the purported mistake does not entitle him to relief because Dr. Goldstein was not the only defense expert at trial and another defense expert testified that Appellant's medical complaints could be explained by chronic degeneration and not accident-related trauma.

In **Andrews**, our Court held "[w]here there is no dispute that the defendant is negligent and both parties' medical experts agree the accident caused **some** injury to the plaintiff, the jury may not find the defendant's negligence was not a substantial factor in bringing about at least **some** of plaintiff's injuries." **Andrews**, 800 A.2d at 962 (emphasis in original). In **Andrews**, however, we distinguished the facts of that case with our decisions in **Henery v. Shadle**, 661 A.2d 439 (Pa. Super. 1995), **Holland v. Zelnick**, 478 A.2d 885 (Pa. Super. 1984), and **Majczyk v. Oesch**, 789 A.2d 717 (Pa. Super. 2001) (*en banc*):

> The[] cases, in which both parties' experts agree the accidents caused some injury, are distinguishable from **Henery** [] and **Holland**[.] In **Henery** and **Holland**, the experts for both sides disagreed that the accidents in question caused the soft tissue injuries alleged. Although the defense experts in both cases conceded that a soft tissue injury "could have" or "may have" been caused by the accidents, neither expert conceded the accident actually caused any soft tissue injuries. Thus, the juries in **Henery** and **Holland** were justified in finding the accidents did not cause the plaintiffs' injuries, as this finding did not contradict a consensus among the medical experts that the accident caused some injury.
>
> On the other hand, in the cases where the experts agreed the accidents caused some injury, but the jury found to the contrary, that finding was determined to have contradicted all the evidence of the medical experts. A new trial on damages was warranted, because such a verdict bears no rational relation to the evidence adduced at trial.
>
> [T]his Court considered the issue in **Majczyk v. Oesch**, 789 A.2d 717 (Pa. Super. 2001) (*en banc*). In that case, the defendant's medical expert conceded the plaintiff had some sore muscles after the accident. The jury, however, did not award the plaintiff damages. This Court concluded that the jury may decide, based on their experience and common sense, that a claimed injury is

- 8 -

not serious enough to award compensation. In other words, the jury is permitted to find the defendant's negligence caused an "injury," but that the "injury" caused was not compensable. Thus, this Court held, "that the determination of what is a compensable injury is uniquely within the purview of the jury." **Id.** at 726. Our reading of **Majczyk**, however, does not lead us to conclude that a jury may disregard uncontroverted expert witness testimony that the accident at issue [caused] some injury. Rather, we conclude the jury must find the accident was a substantial cause of at least some injury, where both parties['] medical experts agree the accident caused some injury. While the jury may then find the injuries caused by the accident were incidental or non-compensable and deny damages on that basis, the jury may not simply find the accident did not "cause" an injury, where both parties' medical experts have testified to the contrary.

**Andrews**, 800 A.2d at 963–964.

From our review of the record in this case, the parties' medical experts did not agree that the accident at issue caused Appellant to sustain some injury. Here, as noted by the trial court, the defense relied upon the expert report of "Michael Brooks, M.D., J.D., board certified diagnostic radiologist," who opined:

It is [] my opinion, within a reasonable degree of medical certainty, after review of the lumbar imaging study as described above to state the following in relation to a traumatic event dated [March 11, 2016]:

One; chronic and longstanding preexisting degenerative changes are present[.]

This finding is consistent with chronic degenerative process which would predate and be unassociated with the traumatic event in question.

There are no findings in the lumbar imaging study which would be caused by the traumatic event in question.

N.T., 1/22/2020, at 133; **see also** Trial Court Opinion, 8/3/2020, at 3-5 ("Defense radiologist, Dr. Michael Brooks, found that Appellant's condition was part of a chronic degenerative process, unrelated to and unexacerbated by the collision."). On appeal, Appellant does not challenge the trial court's reliance on Dr. Brooks opinion. Accordingly, we reject Appellant's suggestion that both parties' medical experts agreed that the accident caused injury. Hence, it was not error for the jury to find that the accident was not the cause of Appellant's injuries.[4] As such, Appellant is not entitled to a new trial where the trial evidence presented was conflicting and the jury could have decided in favor of either party.

Order affirmed.

---

[4] Finally, we briefly respond to Appellant's assertion that the trial court erred when it opined that the jury's finding could have been based on other factors such as Appellant's medical records, an assessment of Appellant's credibility at trial and when reporting his injuries, as well as a subsequent rear-end collision involving Appellant after the accident at hand. After determining, based upon **Majczyk**, that the jury's verdict in this case reflected its finding that the parties' experts did not agree that Appellant's injuries were caused by the accident in question, the trial court went on to state that it was also within the jury's province to determine whether the injuries were compensable and that the jury could properly consider the aforementioned factors. As we explained at length above, the jury may not disregard agreement between competing experts that an accident caused some injury to the plaintiff. In certain instances, however, the jury may find that claimed injuries were incidental or unworthy of compensation. We need not examine which of these scenarios manifested in this case, however, because the trial court here properly applied **Andrews** when it determined that the experts for both parties did not reach a consensus. We affirm the trial court's decision on this basis. **See Generation Mortg. Co. v. Nguyen**, 138 A.3d 646, 651 (Pa. Super. 2016) ("As an appellate court, we may uphold a decision of the trial court if there is any proper basis for the result reached; thus we are not constrained to affirm on the grounds relied upon by the trial court.").

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/21